**Darrell Eugene ALEXANDER, Petitioner,**

v.

**Gary L. JOHNSON, Director Texas Department of Criminal Justice, Institutional Division, Respondent.**

**No. CIV.A. H–99–3441.**

United States District Court, S.D. Texas.

July 12, 2001.

Brent Evan Newton, Assist. Fed. Pub. Defender, Houston, TX, Roland E. Dahlin, II, Fed. public Defender, Brownsville, TX, for petitioner.

Darrell Eugene Alexander, Beaumont, TX, pro se.

Brent Evan Newton, Assist. Fed. Pub. Defender, Houston, TX, Thomas M. Jones, Assist. Atty. Gen., Austin, TX, for respondent.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

### I. *Introduction*

Petitioner Darrell Eugene Alexander ("Alexander") challenges the 1995 revocation of his parole based on an unconstitutional state statute. Respondent Gary L. Johnson ("Johnson") contends that the petition is untimely and that no grounds exist for equitable tolling, that some of Alexander's claims are unexhausted, and that his underlying claims lack merit. After conducting an evidentiary hearing, reviewing the record, and considering the post-hearing briefs submitted by the parties, the court is of the opinion that Alexander's petition for writ of habeas corpus (# 1) should be granted.

### II. *Procedural History*

On August 14, 1986, Alexander was convicted of the manufacture of a controlled substance, methamphetamine, and was sentenced to sixty-five years' imprisonment. *See State v. Alexander*, No. 428498 (179th Dist. Ct., Harris County, Tex., Aug. 14, 1986). The Fourteenth Court of Appeals affirmed his conviction in an unpublished opinion. *See Alexander v. State*, No. A14–86–667CR (Tex.App.—Houston [14th Dist.] June 25, 1987, no pet.). Alexander was released on parole on June 21, 1991. His parole was revoked on May 9, 1995, for the alleged stalking/harassment of his former common-law wife, Tamitha Alexander ("Tamitha"), and he was returned to prison to complete his sentence.

On March 18, 1997, Alexander filed his first state application for writ of habeas corpus claiming that there was insufficient evidence for the revocation of his parole. The Texas Court of Criminal Appeals denied his application without written order on May 28, 1997. *See Ex parte Alexander*,

No. 33,823–01 (Tex.Crim.App. May 28, 1997). Alexander filed his first federal petition for writ of habeas corpus on June 19, 1997, again claiming that there was insufficient evidence to support the revocation of his parole. The United States District Court granted Alexander relief on the insufficiency ground and also noted, *sua sponte*, that the statute upon which the revocation was based had been declared unconstitutional by the Texas Court of Criminal Appeals. *See Alexander v. Johnson*, No. H–97–2177 (S.D.Tex. May 30, 1998) (citing *Long v. State*, 931 S.W.2d 285, 297 (Tex.Crim.App.1996)).

On appeal, on December 21, 1998, the Fifth Circuit vacated the judgment and remanded the case to the district court with instructions to dismiss the petition without prejudice to allow the state courts an opportunity to consider the unexhausted claim regarding the constitutionality of the stalking statute. *See Alexander v. Johnson*, 163 F.3d 906, 908–09 (5th Cir. 1998). Specifically, the court found Alexander's habeas petition to be a "mixed" petition, containing both exhausted and unexhausted claims, and explained that "[a]lthough Alexander did not assert the unconstitutionality of the Texas stalking statute as a ground for habeas relief, his federal habeas petition nevertheless became a 'mixed' petition when the district court, *sua sponte*, raised, and granted relief on, that issue." *Id.* at 908. As a consequence, Alexander moved on December 30, 1998, to dismiss the issue that had been raised *sua sponte* by the district court and requested that the writ of habeas corpus and release order be reinstated. On January 22, 1999, the district court denied Alexander's motion to dismiss the unexhausted claim and, pursuant to the mandate of the Fifth Circuit, dismissed his federal habeas petition without prejudice. *See Alexander v. Johnson*, No. H–97–2177 (S.D.Tex. Jan. 22, 1999).

On January 4, 1999, Alexander filed his second state habeas application in order to exhaust the claim based on the constitutionality of the stalking statute. On June 16, 1999, the Texas Court of Criminal Appeals denied his application without written order on the findings of the trial court without a hearing. *See Ex parte Alexander*, No. 33,823–02 (Tex.Crim.App. June 16, 1999). The state trial court found that the revocation of Alexander's parole rested not only on the unconstitutional stalking statute but also on a state statute prohibiting the making of terroristic threats, thus rendering the revocation of his parole proper and his second state habeas application moot.

On June 30, 1999, Alexander filed an amended federal habeas petition bearing the former cause number and on August 23, 1999, filed a motion for immediate release in that case. The district court denied his motion by order dated September 14, 1999, informing him that "[b]ecause civil action number H–97–2177 is now closed, to seek habeas corpus relief, Alexander must refile his petition and obtain a new civil action number." On September 21, 1999, Alexander filed the pending federal habeas petition, instituting a separate action under a new cause number. After Johnson filed a motion for summary judgment asserting that Alexander's current petition is time-barred, the court held an evidentiary hearing on February 20, 2001, ordering post-hearing briefing on the issue of equitable tolling and other issues raised at the hearing. The following day, the court denied without prejudice Johnson's motion for summary judgment as well as Alexander's motions for judgment on the pleadings and cross-motion for summary judgment.

III. *Claims*

Alexander raises the following claims in support of his petition for federal habeas corpus relief:

i. the evidence was insufficient to revoke his parole; and

ii. the revocation of his parole was based on an unconstitutional anti-stalking statute.

## IV. *Analysis*

### A. *Timeliness of Petition*

#### 1. *Statute of Limitations*

Johnson argues that Alexander's federal habeas petition should be dismissed because it was not filed within the applicable limitation period set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Prior to the AEDPA's enactment, "a prisoner faced no strict time constraints" on seeking federal habeas corpus relief. *Villegas v. Johnson,* 184 F.3d 467, 468 (5th Cir.1999); *see Davis v. Johnson,* 158 F.3d 806, 809 n. 4 (5th Cir.1998), *cert. denied,* 526 U.S. 1074, 119 S.Ct. 1474, 143 L.Ed.2d 558 (1999). The "AEDPA establishes, for the first time, an explicit limitation period for state prisoners filing federal habeas petitions." *Fisher v. Johnson,* 174 F.3d 710, 711 (5th Cir.1999), *cert. denied,* 531 U.S. 1164, 121 S.Ct. 1124, 148 L.Ed.2d 991 (2001) (citing *Lonchar v. Thomas,* 517 U.S. 314, 327, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996)). "The AEDPA, which became effective April 24, 1996, enacted a one-year period of limitation for federal habeas proceedings that runs, unless tolled, from the date on which the petitioner's conviction became final at the conclusion of direct review or during the pendency of a 'properly filed application for State post-conviction or other collateral review.'" *Cantu–Tzin v. Johnson,* 162 F.3d 295, 298 (5th Cir.1998), *cert. denied,* 525 U.S. 1091, 119 S.Ct. 847, 142 L.Ed.2d 701 (1999) (quoting 28 U.S.C. § 2244(d)(1)(A), (d)(2)); *see Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir.1999), *cert. denied,* 529 U.S. 1099, 120 S.Ct. 1834, 146 L.Ed.2d 777 (2000); *Villegas,* 184 F.3d at 468; *Turner v. Johnson,* 177 F.3d 390, 391 (5th Cir.), *cert. denied,* 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 389 (1999); *Fields v. Johnson,* 159 F.3d 914, 915 (5th Cir. 1998); *Davis,* 158 F.3d at 809–11; *Flanagan v. Johnson,* 154 F.3d 196, 198–200 (5th Cir.1998). The AEDPA's statute of limitation applies to all habeas petitions filed after the Act's effective date. *See Scott v. Johnson,* 227 F.3d 260, 262 (5th Cir.2000), *cert. denied,* 532 U.S. 963, 121 S.Ct. 1498, 149 L.Ed.2d 383 (2001) (citing *Graham v. Johnson,* 168 F.3d 762, 775 (5th Cir.1999), *cert. denied,* 529 U.S. 1097, 120 S.Ct. 1830, 146 L.Ed.2d 774 (2000)); *Kiser v. Johnson,* 163 F.3d 326, 327 (5th Cir.1999) (citing *United States v. Flores,* 135 F.3d 1000, 1002–06 (5th Cir.1998), *cert. denied,* 525 U.S. 1091, 119 S.Ct. 846, 142 L.Ed.2d 700 (1999)); *Fields,* 159 F.3d at 915; *see also Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

The AEDPA provides that:

(d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and

made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a ·properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1), (d)(2).

A state conviction becomes final "when the availability of direct appeal to the state courts has been exhausted and the time for filing a petition for a writ of certiorari has elapsed or a timely filed petition has been finally denied." *Caspari v. Bohlen*, 510 U.S. 383, 390, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994) (citing *Griffith v. Kentucky*, 479 U.S. 314, 321 n. 6, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)); *see Ott*, 192 F.3d at 513; *Flanagan*, 154 F.3d at 197; *see also* TEX. R. APP. P. 26.2(a) (notice of appeal must be filed within thirty days after the day sentence is imposed); TEX. R. APP. P. 68.2(a) (petition for discretionary review must be filed within thirty days after the court of appeals renders judgment or overrules the last timely motion for rehearing); SUP. CT. R. 13.1 (petition for writ of certiorari must be filed within ninety days after the entry of judgment by a state court of last resort or the entry of an order denying discretionary review by such court). In cases where a petitioner's

conviction became final before the enactment of the AEDPA, however, he was allowed a one-year grace period until April 24, 1997, as a reasonable time to file for relief. *See Ott*, 192 F.3d at 512; *Fisher*, 174 F.3d at 712; *Kiser*, 163 F.3d at 327; *Sonnier v. Johnson*, 161 F.3d 941, 944 (5th Cir.1998); *Fields*, 159 F.3d at 915–16; *Flanagan*, 154 F.3d at 200–02; *Flores*, 135 F.3d at 1006. Moreover, the time during which a state habeas or other collateral review proceeding is pending is excluded by statute from the one-year period. *See* 28 U.S.C. § 2244(d)(2); *Duncan v. Walker*, 533 U.S. 167, 121 S.Ct. 2120, 2123, 2126, 150 L.Ed.2d 251 (2001); *Ott*, 192 F.3d at 512; *Villegas*, 184 F.3d at 469; *Fisher*, 174 F.3d at 712; *Sonnier*, 161 F.3d at 944; *Fields*, 159 F.3d at 916. A state post-conviction proceeding becomes final upon the issuance of a decision by the state's highest court or upon expiration of the time for seeking review by such court. *See Ott*, 192 F.3d at 513.

In this instance, Alexander's parole was revoked on May 9, 1995, which was prior to the enactment of the AEDPA. Alexander, therefore, was entitled to the benefit of the grace period for filing his petition. *See Flanagan*, 154 F.3d at 202. Hence, in the absence of statutory or equitable tolling, Alexander had until April 24, 1997, the end of the grace period, to seek federal habeas corpus relief.[1] *See Ybanez v. Johnson*, 204 F.3d 645, 646 (5th Cir.), *cert. denied*, 531 U.S. 881, 121 S.Ct. 193, 148 L.Ed.2d 134 (2000); *Ott*, 192 F.3d at 512; *Kiser*, 163 F.3d at 328; *Flanagan*, 154 F.3d at 201–02. The state court rec-

---

1. Johnson contends that to the extent Alexander is relying on the unconstitutionality of the stalking statute, his claim did not accrue until September 11, 1996, the date the Texas Court of Criminal Appeals held the stalking statute to be unconstitutional, as the factual predicate of this claim could not have been discovered prior that time. *See Long*, 931 S.W.2d at 297; *see also* 28 U.S.C. § 2244(d)(1)(D). Under this approach, Alexander's federal petition was due on or before September 11, 1997. Thus, Alexander's first federal habeas petition, filed June 10, 1997, was timely on the issue of the statute's constitutionality even in the absence of statutory or equitable tolling.

ord reflects that Alexander filed his first state habeas application on March 18, 1997, which was denied by the Texas Court of Criminal Appeals on May 28, 1997. Under § 2244(d)(2), the time between the filing of a state habeas application and its denial is not counted against the one-year limitation period. *See Duncan,* 121 S.Ct. at 2123, 2126, 2128; *Ott,* 192 F.3d at 512.

■■■■ Johnson argues that the pendency of the first state habeas petition should not toll limitations in this case with respect to the constitutionality of the stalking statute because that issue was not raised in the petition. A review of the record reveals, however, that Alexander challenged the revocation of his parole under the Fourteenth Amendment to the United States Constitution. The constitutionality of the statute under which his parole was revoked necessarily falls within the purview of "the pertinent judgment or claim" he was contesting. *See* 28 U.S.C. § 2244(d)(2). Johnson has cited no authority espousing a contrary interpretation. While the Fifth Circuit has not addressed this issue, the Ninth Circuit has specifically rejected Johnson's interpretation of the statute, holding that the "AEDPA's period of limitation is tolled during the pendency of a state application challenging the pertinent judgment, even if the particular application does not include a claim later asserted in the federal habeas petition." *Tillema v. Long,* 253 F.3d 494, 502–03 (9th Cir.2001).

Under Texas law, "a challenge that a statute is unconstitutional on its face can be considered even when raised for the first time on appeal because if a statute upon which a conviction is based is unconstitutional, 'it is void from its inception, is no law, confers no rights, bestows no pow-

er on anyone, and justifies no act performed under it.'" *Cartier v. State,* 58 S.W.3d 756, 758–59 (Tex.App.—Amarillo 2001, no pet. h.) (quoting *Medina v. State,* 986 S.W.2d 733, 735 (Tex.App.—Amarillo 1999, pet. ref'd); *accord Reyes v. State,* 753 S.W.2d 382, 383–84 (Tex.Crim.App. 1988)); *see Rabb v. State,* 730 S.W.2d 751, 752 (Tex.Crim.App.1987). "'When a statute is adjudged to be unconstitutional, it is as if it had never been passed.'" *Reyes,* 753 S.W.2d at 383 (quoting *Ex parte Bockhorn,* 62 Tex.Crim. 651, 138 S.W. 706, 707 (1911)). Thus, Alexander it not barred from bringing his claim contesting the constitutionality of the stalking statute on the ground that he failed to raise it in his first state habeas proceeding.

■■■■ In view of the statutory tolling of limitations during the pendency of Alexander's first state habeas application, the one-year limitation period for filing his federal habeas petition expired on July 4, 1997.[2] *See Scott,* 227 F.3d at 262; *Fisher,* 174 F.3d at 712; *Kiser,* 163 F.3d at 328. Alexander signed his first federal habeas petition on June 10, 1997, and the Clerk of Court docketed it on June 19, 1997. Under controlling authority, Alexander's petition was deemed filed "when he tendered the papers to the prison authorities for mailing to the district court," but it cannot be assumed that he tendered the petition for mailing any earlier than June 10, 1997, the date he signed it. *See Spotville v. Cain,* 149 F.3d 374, 378 (5th Cir.1998); *see also Coleman,* 184 F.3d at 401; *Fisher,* 174 F.3d at 712 n. 8. Thus, at that point, Alexander was in compliance with the statute of limitations.

On January 1, 1999, after the Fifth Circuit issued its ruling on December 21,

**2.** If the statute of limitations did not begin to run until the *Long* decision was rendered, Alexander's first state habeas application tolled the limitations period until November 22, 1997.

1998, and before his first federal petition was dismissed, Alexander filed a second state habeas application. His federal petition was denied without prejudice on January 25, 1999, and, on June 16, 1999, the Texas Court of Criminal Appeals denied his second state writ. Alexander signed his amended federal petition, bearing the former cause number, on June 25, 1999, and tendered it for filing. After being informed on September 14, 1999, that it was necessary to file a new cause of action, he signed his second federal petition on September 17, 1999, which reached the Clerk's office on September 21, 1999.

■ The United States Supreme Court recently clarified that statutory tolling is unavailable for the period of time Alexander's first federal habeas petition was pending. The Court resolved a split among the circuits on this issue, holding that the statute of limitations is not tolled during the pendency of a federal habeas petition that is subsequently dismissed without prejudice. *See Duncan,* 121 S.Ct. at 2129; *accord Grooms v. Johnson,* 208 F.3d 488, 489 (5th Cir.1999). Thus, the deadline for pursuing federal habeas corpus relief had already expired prior to the Fifth Circuit's ruling and before Alexander filed his second state habeas application. Consequently, in the absence of equitable tolling, the instant petition is time-barred.

### 2. *Equitable Tolling*

Alexander argues, however, that he is entitled to the benefit of equitable tolling, rendering his petition timely. The AEDPA's one-year limitation period is not a jurisdictional bar but, instead, constitutes an affirmative defense subject to equitable tolling, "albeit only in 'rare and exceptional circumstances.'" *Felder v. Johnson,* 204 F.3d 168, 170–71 (5th Cir.), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 622, 148 L.Ed.2d 532 (2000) (quoting *Davis,* 158 F.3d at

811); *accord Scott,* 227 F.3d at 263; *Phillips v. Donnelly,* 216 F.3d 508, 511 (5th Cir.2000); *United States v. Patterson,* 211 F.3d 927, 930 (5th Cir.2000); *Molo v. Johnson,* 207 F.3d 773, 775 (5th Cir.2000); *Ott,* 192 F.3d at 513; *Coleman v. Johnson,* 184 F.3d 398, 402 (5th Cir.1999), *cert. denied,* 529 U.S. 1057, 120 S.Ct. 1564, 146 L.Ed.2d 467 (2000); *Turner,* 177 F.3d at 391–92; *Fisher,* 174 F.3d at 713. "'The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable.'" *Patterson,* 211 F.3d at 930 (quoting *Davis,* 158 F.3d at 810). The petitioner bears the burden of proof concerning equitable tolling. *See Phillips,* 216 F.3d at 511. To apply the doctrine of equitable tolling, the facts and circumstances of each case must be considered. *See Patterson,* 211 F.3d at 931 (citing *Fisher,* 174 F.3d at 713).

"'Equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights.'" *Coleman,* 184 F.3d at 402 (quoting *Rashidi v. American President Lines,* 96 F.3d 124, 128 (5th Cir. 1996)); *accord Patterson,* 211 F.3d at 930; *Felder,* 204 F.3d at 171. Hence, "ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing." *Fisher,* 174 F.3d at 714; *accord Felder,* 204 F.3d at 171–72. For equitable tolling to apply, the applicant must diligently pursue habeas corpus relief under § 2254. *See Coleman,* 184 F.3d at 403.

In *Patterson,* a federal prisoner proceeding *pro se* moved to withdraw his motion to vacate sentence without prejudice "'so that he could find an experience[d] writ-writer' and file his § 2255 motion on

'a later date.'"[3] 211 F.3d at 928, 930. The court granted the motion approximately one week after the expiration of the AEDPA grace period. *See id.* at 930. Almost one year later, on April 27, 1998, mistakenly believing that he had one year from the date of the first dismissal to file his § 2255 motion, Patterson moved for a thirty-day extension of time, arguing that without an extension, his motion would be time-barred. *See id.* The court denied the request, incorrectly informing him that the limitations period would expire on April 30, 1998, and he subsequently delivered his second motion to prison officials on that date. *See id.* The district court dismissed the motion as time-barred, accurately stating that the limitations period had expired on April 24, 1997, the last day of the grace period. *See id.*

On appeal, the petitioner argued that "he 'was prejudice[d] because he was misled by the court into thinking he could refile his pleadings.'" *Id.* at 929. The Fifth Circuit noted that "[a]t the time Patterson moved to dismiss his petition, he and the district court apparently were under the mistaken impression that he would not be time-barred from filing another § 2255 motion." *Id.* at 931. The court concluded that Patterson had relied to his detriment on the district court's granting his request to dismiss his initial motion in order to obtain assistance and refile it at a later date, although, on the date of the dismissal, all future filings would have been time-barred. *See id.* at 931–32. The court pointed to a holding of the United States Supreme Court stating that "if a 'court has led the plaintiff to believe that [he] had done everything required of [him],' the doctrine of equitable tolling

may be applied." *Id.* at 931 (quoting *Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984)). Finding that the language used by the district court led the petitioner to believe that he could file a subsequent § 2255 motion, the Fifth Circuit held that the circumstances of the case were "sufficiently rare and extraordinary to warrant equitable tolling of the grace period until April 30, 1998." *Id.* at 932.

■ In the case at bar, the language of the Fifth Circuit's decision similarly suggests that Alexander could refile a petition in federal court after exhausting his state remedies. The court clearly anticipated Alexander returning to federal court if relief were not forthcoming in the state courts, instructing the district court to dismiss his first state habeas petition *without prejudice,* despite the fact that the time had already expired for the filing of a federal habeas petition. *See Alexander,* 163 F.3d at 908–09 (emphasis in original). While the Fifth Circuit did not discuss the timeliness of a subsequent petition, the court observed:

> Needless to say, the basis for the exhaustion doctrine codified in AEDPA is comity. *See Rose,* 455 U.S. at 516, 102 S.Ct. 1198, 71 L.Ed.2d 379. As reflected by the above-discussed AEDPA provisions, the interests of comity are served best in this instance by Texas courts having an opportunity to consider whether Alexander's parole was revoked on the basis of an unconstitutional state statute.

> Along this line, and in the event that Alexander is unsuccessful in obtaining relief in Texas courts, the instant federal court dismissal of his claims without

---

**3.** The Fifth Circuit has recognized that the limitation provisions for § 2254 petitions and § 2255 motions are "nearly identical." *Flores,* 135 F.3d at 1003 n. 7. The federal courts read them *in pari materia* as long as the context does not render such a reading improper. *See id.*

prejudice will not bar him from renewing his claim for federal habeas relief, should the State assert, if and when he does so, that his renewed petition is successive. *See In re Gasery,* 116 F.3d 1051, 1052 (5th Cir.1997) (refiling of federal habeas petition following dismissal of original petition without prejudice for failure to exhaust state remedies is continuation of first collateral attack, and thus not a "successive petition" within the meaning of 28 U.S.C. § 2244(b)); *see also Stewart v. Martinez–Villareal,* 523 U.S. 637, 118 S.Ct. 1618, 1622, 140 L.Ed.2d 849 (1998) (noting that Court has never "suggested that a prisoner whose habeas petition was dismissed for failure to exhaust state remedies, and who then did exhaust those remedies and returned to federal court, was by such action filing a successive petition"). *Id.* at 909.

While, in *Patterson,* the Fifth Circuit expressly rejected the notion that the language of *Gasery* indicates that refiling a habeas petition that was previously dismissed without prejudice constitutes a continuation of the prior proceeding, the court nonetheless found that the circumstances in *Patterson* merited the application of equitable tolling. *See* 211 F.3d at 932 & n. 9. The circumstances of the instant case, likewise, are "sufficiently rare and extraordinary to warrant equitable tolling." *Id.* at 932. In fact, Alexander's situation is far more compelling because it was the district court's *sua sponte* raising the statutory constitutionality claim that rendered Alexander's timely habeas petition a mixed petition and required its dismissal for failure to exhaust state court remedies. The district court also rebuffed Alexander's efforts to rectify the problem, refusing to allow him to dismiss the unexhausted claim. In *Tillema,* the Ninth Circuit found equitable tolling to be required where "the district court committed preju-

dicial legal error when it dismissed [the petitioner's] first federal habeas petition without affording him the opportunity to abandon his sole unexhausted claim as an alternative to suffering dismissal." 253 F.3d at 502.

Here, unlike Tillema, Alexander did not raise an unexhausted claim and, indeed, was not even aware that the court was considering such a claim until the magistrate judge issued a memorandum and recommendation on April 30, 1998. At that juncture, even if his action had been dismissed immediately for non-exhaustion, it would have been too late for Alexander to return to federal court after completing the state process. Moreover, unlike Grooms, who waited a year after his first federal habeas petition was dismissed before filing a second petition and did not attempt exhaustion in the interim, Alexander was quite diligent in exhausting the unexhausted claim at the state level and renewing his claim in federal court. *See Grooms,* 208 F.3d at 490. In fact, within two weeks of the Fifth Circuit's holding that he had failed to exhaust his state remedies and without waiting for the district court to dismiss his petition, Alexander filed his second state habeas application in order to exhaust the claim that had been raised *sua sponte.*

Then, on June 25, 1999, within days of learning that the Texas Court of Criminal Appeals had denied his second state habeas application, Alexander signed an amended federal habeas petition, using the prior federal civil action number, as opposed to commencing a separate cause of action. Rather than being docketed as an amended petition, however, it was attached to a filing fee transmittal notice and was never separately docketed, causing the court to overlook it for several months. Alexander was not notified of the mistake

until almost three months later. Hearing nothing from the court regarding his amended petition, Alexander wrote to the Clerk in August 1999, requesting a copy of the docket sheet. After receiving no response to his letter, he filed a motion to vacate the judgment and a motion for leave to file an amended petition, which were docketed on September 17, 1999, and subsequently denied by the district court in October 1999. Once the amended petition was located, and Alexander was notified that a new cause of action was required, he signed and tendered his current petition for filing within twenty-four hours.

Alexander argues that to hold his *"pro se* mislabeling of his pleading" against him "would place form over substance and contravene the equitable nature of the writ of federal habeas corpus." While Alexander ultimately learned that the institution of another case was necessary, the Fifth Circuit indicated in its decision that, if he were unsuccessful in obtaining relief in state court, he could simply "renew[ ] his claim for federal habeas relief," citing *Gasery* for the proposition that a refiled petition is a "continuation of [the] first collateral attack." *Alexander,* 163 F.3d at 909 (citing *Gasery,* 116 F.3d at 1052). Thus, it was not unreasonable for Alexander to assume that, once his state court remedies proved unavailing, he could merely continue his first collateral attack by amending his petition. The Fifth Circuit has admonished that courts " 'must be cautious not to apply the statute of limitations too harshly.' " *Patterson,* 211 F.3d at 931 (quoting *Fisher,* 174 F.3d at 713). Here, it would be unduly harsh to hold Alexander's second federal petition to be time-barred because he mistakenly amended his first petition rather than filing a new cause of action, and he was not informed of the error until it was too late to file another petition.

" ' "[E]quity is not intended for those who sleep on their rights." ' " *Coleman,* 184 F.3d at 403 (quoting *Fisher,* 174 F.3d at 715 (quoting *Covey v. Arkansas River Co.,* 865 F.2d 660, 662 (5th Cir.1989))). In this instance, although Alexander could have filed his first state habeas application more promptly, he explained at the hearing that he had not previously sought habeas corpus relief and had to "learn[ ] enough about what [he] needed to do to get into Court, plus having to wait on the parole board to send [him] copies of the tapes that [he] sent to the Court." In any event, the stalking statute was not declared unconstitutional until September 1996. Since learning of that decision, Alexander has allowed no more than a handful of days to pass between the resolution of each stage of the proceeding and his initiation of the next. In fact, rather than sleeping on his rights, once he was notified that he had to refile his federal habeas petition under a new cause number, Alexander "stayed up all night long, typed up what needed to be typed up, and re-filed it that morning."

Moreover, the Fifth Circuit has intimated that if a petitioner can demonstrate actual innocence, he may be entitled to invoke equitable tolling to avoid a limitations bar. *See Felder,* 204 F.3d at 171 & n. 8. While the court found that "Felder's actual innocence claim . . . does not constitute a 'rare and exceptional' circumstance, given that many prisoners maintain they are innocent," in a footnote, the court noted that "Felder has not made a *showing* of actual innocence." *Id.* (emphasis in original). In *Molo,* the Fifth Circuit declined to decide whether proof of factual innocence would toll the limitations period, finding instead that the petitioner had not shown that he was factually innocent. *See* 207 F.3d at 775. In the context of a claimed procedural default, a petitioner is excused from complying with state proce-

dural requirements if he "can make a persuasive showing that he is actually innocent of the charges against him," because to hold otherwise would effect a "fundamental miscarriage of justice." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir.2001).

Because the state law under which his parole was revoked has been declared unconstitutional, Alexander is by necessity actually innocent of a violation of the law. "It is well settled that if the statute under which appellant has been convicted is unconstitutional, he has not in the contemplation of the law engaged in criminal activity; for an unconstitutional statute in the criminal area is to be considered no statute at all." *Hiett v. United States*, 415 F.2d 664, 666 (5th Cir.1969), *cert. denied*, 397 U.S. 936, 90 S.Ct. 941, 25 L.Ed.2d 117 (1970). Although "[c]ourts have framed the actual innocence factor differently, ... the core idea is that the petitioner may have been imprisoned for conduct that was not prohibited by law." *Reyes–Requena v. United States*, 243 F.3d 893, 903 (5th Cir. 2001). Here, Alexander has made a showing of actual innocence, because he cannot be held to have violated the facially unconstitutional statute upon which the revocation of his parole was based. *See Hiett*, 415 F.2d at 666; *Reyes*, 753 S.W.2d at 383–84; *Jefferson v. State*, 751 S.W.2d 502, 502–03 (Tex.Crim.App.1988); *Cartier*, 58 S.W.3d 756, 758. Having been declared unconstitutional, the stalking statute was "void from its inception and confer[red] no right or benefit." *Reyes*, 753 S.W.2d at 384. Clearly, "the incarceration of one whose conduct is not criminal 'inherently results in complete miscarriage of justice.'" *Reyes–Requena*, 243 F.3d at 904 (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974)). Consequently, to preclude Alexander from pursuing federal habeas corpus relief would, in this context, effect a fundamental miscarriage of justice.

Finally, while the Fifth Circuit has been reluctant to apply equitable tolling, in a concurring opinion in *Duncan*, Supreme Court Justice John Paul Stevens, joined by Justice David Souter, observed that "[n]either the court's narrow holding, nor anything in the text or legislative history of AEDPA, precludes a federal court from deeming the limitations period tolled for such a petitioner as a matter of equity," adding that "equitable considerations may make it appropriate for federal courts to fill in a perceived omission on the part of Congress by tolling AEDPA's statute of limitations for unexhausted federal habeas petitions." 121 S.Ct. at 2130. When, as here, "'external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute may be appropriate.'" *Tillema*, 253 F.3d 494, 503–04 (quoting *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir.1999)); *accord Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir.1999) (equitable tolling is appropriate when movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence); *see Henderson v. Johnson*, 1 F.Supp.2d 650, 654 (N.D.Tex.1998) (enumerating eight factors to be considered when evaluating the propriety of equitable tolling). In this situation, given the external forces working adversely to Alexander, through no fault of his own, the petitioner has demonstrated the type of rare and exceptional circumstances warranting the application of equitable tolling.

## B. *Grounds for Parole Revocation*

Johnson further argues that Alexander's parole was revoked not only for stalking/harassment but also for making terroristic threats. The Preliminary Report Processing Sheet, dated March 29, 1995, contained in his parole records, reflects

that the State sought to revoke Alexander's parole on both grounds. The Administrative Release Hearing Report indicates that the preliminary hearing officer concluded that Alexander had committed both offenses and recommended that the case proceed to a revocation hearing. The Revocation Hearing Report Processing Sheet, dated April 28, 1995, reveals that the hearing officer also found justification to revoke Alexander's parole based on both offenses and recommended revocation. The same document also discloses, however, that the hearing section found evidence to support only the stalking/harassment charge, as "N" for "No" is checked in the column regarding terroristic threats. On May 9, 1995, the Texas Board of Pardons and Paroles ("the Board") issued a document entitled "Proclamation of Revocation and Warrant of Arrest," which lists "Rule # : 2 (STALKING/HARASSMENT)" as the sole basis for revocation. As shown by their affidavits, the two Board members who voted to revoke Alexander's parole could not recall whether they voted to revoke on one or both grounds.

Throughout the course of Alexander's first state habeas application, as well as his first federal habeas petition, the parties appeared to agree that Alexander's parole had been revoked solely on the stalking/harassment ground. Only after Alexander returned to state court to exhaust the claim based on the constitutionality of the stalking statute was it suggested that his parole had been revoked on both grounds.

■ On state habeas review, based on what appears to be an erroneous reading of the record, the state trial court found:

> 11. The Court finds, based on the credible affidavit of Kim B. Vernon, that Applicant's parole was revoked based on

his actions which constituted the offenses of stalking and terroristic threat. *Ex parte Alexander*, No. 428498–B (179th Dist. Ct., Harris County, Tex., May 4, 1999) (Finding of Fact # 11). Consequently, the court concluded as a matter of law:

> 1. Assuming his contention that his parole revocation was based on an unconstitutional stalking statute is correct, Applicant's contention is moot because the Board of Pardons and Paroles had a legally sufficient basis to revoke Applicant's parole pursuant to his actions which constituted the offense of terroristic threat.
>
> 2. Applicant has failed to prove that his parole was improperly revoked.

*Id.* The Texas Court of Criminal Appeals adopted the findings of the trial court without written order. *See Ex parte Alexander*, No. 33,823–01 (Tex.Crim.App. June 16, 1999). Yet, the affidavit of Kim B. Vernon ("Vernon"), Assistant General Counsel for the Board, proffered by the State, does not state that Alexander's parole was revoked on both grounds. Vernon, while recognizing that the hearing officer had sustained both allegations, says in her affidavit, "The Board found that Applicant's behavior toward the Complainant constituted harassment in the form of stalking and was a violation of his parole conditions." Noticeably lacking is any mention of a terroristic threat or suggestion that the Board revoked Alexander's parole on that basis.

Federal courts in habeas corpus proceedings are required to accord a presumption of correctness to state court findings of fact, unless they lack even fair support in the record. *See Demosthenes v. Baal*, 495 U.S. 731, 735, 110 S.Ct. 2223, 109 L.Ed.2d 762 (1990); *Rushen v. Spain*, 464 U.S. 114, 120, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983); *Emery v. Johnson*, 139 F.3d

191, 199 (5th Cir.1997), *cert. denied,* 525 U.S. 969, 119 S.Ct. 418, 142 L.Ed.2d 339 (1998); *Carter,* 131 F.3d at 460; *James v. Whitley,* 39 F.3d 607, 609–10 (5th Cir. 1994), *cert. denied,* 514 U.S. 1069, 115 S.Ct. 1704, 131 L.Ed.2d 565 (1995); *Crank v. Collins,* 19 F.3d 172, 176 (5th Cir.), *cert. denied,* 512 U.S. 1214, 114 S.Ct. 2699, 129 L.Ed.2d 825 (1994). The Fifth Circuit has confirmed that "any state-court factual determinations must be presumed correct unless rebutted by clear and convincing evidence." *Davis,* 158 F.3d at 812 (citing 28 U.S.C. § 2254(e)(1)); *accord Clark v. Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831, 121 S.Ct. 84, 148 L.Ed.2d 46 (2000); *Kitchens v. Johnson,* 190 F.3d 698, 700 (5th Cir.1999); *Jackson v. Johnson,* 150 F.3d 520, 524 (5th Cir.), *cert. denied,* 526 U.S. 1041, 119 S.Ct. 1339, 143 L.Ed.2d 503 (1999). Nevertheless, "[w]hile the measure of deference afforded state court factual findings is substantial, ... it is not absolute." *Childress v. Johnson,* 103 F.3d 1221, 1226 n. 7 (5th Cir. 1997). "Section 2254(d)(2) authorizes issuance of the writ if the state court decision 'was based on an unreasonable determination of the facts in light of the evidence presented.'" *Id.* (quoting 28 U.S.C. § 2554(d)(2)). Because, in this instance, the court based its holding on an erroneous reading of Vernon's affidavit, the state courts' findings are not entitled to deference, as they are devoid of support in the record and "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2554(d)(2).

■■■ As described above, the Proclamation of Revocation, dated May 9, 1995, issued by the Board after the hearing, specifies "Rule #: 2 (STALK-ING/HARASSMENT)" as the only ground upon which Alexander's parole was revoked.[4] This official record of the state parole board is presumed to be regular and is accorded great evidentiary weight in federal habeas corpus proceedings. *See Carter v. Collins,* 918 F.2d 1198, 1202 n. 4 (5th Cir.1990); *Hobbs v. Blackburn,* 752 F.2d 1079, 1081–82 (5th Cir.), *cert. denied,* 474 U.S. 838, 106 S.Ct. 117, 88 L.Ed.2d 95 (1985); *Walker v. Maggio,* 738 F.2d 714, 717 (5th Cir.1984), *cert. denied,* 469 U.S. 1112, 105 S.Ct. 793, 83 L.Ed.2d 786 (1985); *Webster v. Estelle,* 505 F.2d 926, 929–30 (5th Cir.1974), *cert. denied,* 421 U.S. 918, 95 S.Ct. 1581, 43 L.Ed.2d 785 (1975). Under these circumstances, Johnson has not adduced adequate evidence to rebut this presumption, nor has he demonstrated that this instrument is inaccurate or incomplete in any respect. Hence, this court may properly rely on the regularity of the Board's records, which reflect that Alexander's parole was revoked solely for an alleged violation of the stalking statute. *See Thompson v. Estelle,* 642 F.2d 996, 998 (5th Cir.1981).

## C. *Exhaustion*

In his petition, Alexander raised only two claims—that the evidence was insufficient to revoke his parole and that the revocation of his parole was predicated on an unconstitutional stalking statute. In his motion for summary judgment, Johnson listed those as Alexander's only claims and conceded that both had been exhausted. In his post-hearing brief, however, Johnson asserts that Alexander's insufficiency of the evidence claims are based on three separate grounds—stalking, harassment, and terroristic threats—and that he is also bringing a claim of actual inno-

---

4. Rule 2, as set forth in Alexander's Certificate of Parole, required him to "[o]bey all municipal, county, state and federal laws."

cence, arguing that at least some of these claims remain unexhausted. In his first state habeas application, Alexander complained that the Board "ARBITRARILY REVOKED HIS PAROLE ON INSUFFICIENT EVIDENCE," without specifying that his claim rested on the stalking ground alone. Notably, in his motion for summary judgment, Johnson specifically stated that Alexander had exhausted his claim that "the evidence was insufficient to revoke his parole." Alexander now maintains that "he has abandoned any conditional claim that the evidence was insufficient to support a terroristic threat finding," provided the court determines, as it has, that the Board did not revoke his parole on that ground. Alexander, likewise, states that he is not making a claim of actual innocence with regard to the merits of his claims. Therefore, even if these claims were unexhausted, Alexander has now abandoned them.

 Johnson further argues that Alexander has not exhausted his claim that the evidence was insufficient to revoke his parole because he raised only a state law claim in the state courts and did not allege that the evidence was insufficient under a federal constitutional standard. Nevertheless, as Alexander points out, from Johnson's initial response to Alexander's first federal petition · through his motion for summary judgment in the instant case, Johnson has conceded exhaustion of this claim. Indeed, Johnson apparently did not raise a non-exhaustion defense to the sufficiency of the evidence claim when he appealed to the Fifth Circuit on the issue of non-exhaustion of the *sua sponte* raised claim. Had Johnson raised the issue, Alexander could also have exhausted that claim in his second state habeas application. "Failure to exhaust is an affirmative defense that may be waived by the state's failure to rely upon the doctrine." *Mago-*

*uirk v. Phillips,* 144 F.3d 348, 357 (5th Cir.1998). Here, Johnson failed to plead this defense and, in fact, conceded that the defense was unavailable. Thus, Johnson has waived the non-exhaustion defense and may not belatedly rely on it to preclude relief.

 Moreover, Johnson's argument is without merit. In his *pro se* pleadings, Alexander invoked the Due Process Clause of the Fourteenth Amendment and cited federal court decisions addressing constitutional issues implicated in the revocation of his parole. He specifically stated in his first state application for writ of habeas corpus, "Applicant is being illegally confined and restrained of his liberty by virtue of a parole revocation that violated his due process under the State Constitution ... and 14th Amendment [to] the United States Constitution. The Applicants [sic] parole was revoked on insufficient evidence and through the erroneous application of the preponderance of the evidence standard." While, as Johnson points out, Alexander referred only to the state law "preponderance of the evidence" standard for insufficient evidence, without mentioning the federal "some evidence" standard, he clearly raised both state and federal claims.

It is well recognized that *pro se* pleadings are to be construed liberally. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Pena v. United States,* 122 F.3d 3, 4 (5th Cir.1997); *Martin v. Maxey,* 98 F.3d 844, 846 n. 4 (5th Cir.1996). "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Haines,* 404 U.S. at 520, 92 S.Ct. 594). "A court is expected to exercise 'common sense' in interpreting these frequently diffuse

pleadings, ... and is to accord them a 'liberal yet realistic construction.'" *Hooks v. Army & Air Force Exch. Serv.*, 944 F.Supp. 503, 505–06 (N.D.Tex.1996) (quoting *Johnson v. Estelle*, 625 F.2d 75, 77 (5th Cir.1980); *Simmons v. Zibilich*, 542 F.2d 259, 260 (5th Cir.1976)). Here, common sense dictates that when Alexander claimed that the revocation of his parole violated his state and federal due process rights and, in the same paragraph, alleged that his parole was revoked on insufficient evidence, he was raising insufficiency of the evidence claims under both state and federal law. Thus, Johnson's exhaustion arguments must be rejected.

### D. *Teague Analysis*

 At the evidentiary hearing, Johnson suggested that the principle established by the United States Supreme Court in *Teague v. Lane* precludes this court from considering the unconstitutionality of the stalking statute on collateral review. *See* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). In *Teague,* the Court held that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Id.* The rule in *Teague* "'prevents a federal court from granting habeas relief to a state prisoner based on a rule announced after his conviction and sentence became final.'" *Jackson v. Johnson*, 217 F.3d 360, 361 (5th Cir.2000) (quoting *Caspari*, 510 U.S. at 389, 114 S.Ct. 948); *see United States v. Lopez*, 248 F.3d 427, 432 (5th Cir.2001). The Court adopted Justice Harlan's views expressed in *Mackey v. United States* that "new rules should always be applied retroactively to cases on direct review, but that generally they should not be applied retro-

actively to criminal cases on collateral review." *Teague*, 489 U.S. at 303, 109 S.Ct. 1060 (citing *Mackey*, 401 U.S. 667, 675, 91 S.Ct. 1160, 28 L.Ed.2d 404 (1971)); *accord Jackson*, 217 F.3d at 362. Alexander asserts that Johnson waived the *Teague* defense by his failure to raise it at an earlier point in the proceedings. The Fifth Circuit, however, has concluded that, "absent compelling reasons to the contrary, a federal court should apply *Teague* even when it has been implicitly waived by the State." *Id.*

A *Teague* analysis is applied in three steps. *See O'Dell v. Netherland,* 521 U.S. 151, 156, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997); *Soffar v. Johnson,* 237 F.3d 411, 452 (5th Cir.2000); *Jackson,* 217 F.3d at 363 (citing *Caspari,* 510 U.S. at 390, 114 S.Ct. 948). Generally, a court first determines when the petitioner's conviction and sentence became final. *See O'Dell,* 521 U.S. at 156, 117 S.Ct. 1969; *Lambrix v. Singletary,* 520 U.S. 518, 527, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997); *Soffar,* 237 F.3d at 452; *Jackson,* 217 F.3d at 363; *Fisher,* 169 F.3d at 305. The court then "survey[s] the legal landscape as it then existed to determine whether a state court considering the petitioner's claim would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution." *Soffar,* 237 F.3d at 452; *accord O'Dell,* 521 U.S. at 156, 117 S.Ct. 1969; *Jackson,* 217 F.3d at 363; *Fisher,* 169 F.3d at 305. "In general, ... a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government" and "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. 1060 (emphasis in original).[5] If the petitioner is

---

**5.** The Texas Court of Criminal Appeals argu-

ably did not announce a "new rule" in *Long*

seeking the benefit of a new rule, it must be determined " 'whether that rule falls within one of the two narrow exceptions to the nonretroactivity principle.' " *Jackson*, 217 F.3d at 363 (quoting *Fisher*, 169 F.3d at 305); *accord Tyler v. Cain*, 533 U.S. 656, 665, 121 S.Ct. 2478, 2483–84, 150 L.Ed.2d 632 (2001); *O'Dell*, 521 U.S. at 156–57, 117 S.Ct. 1969; *see Teague*, 489 U.S. at 307, 109 S.Ct. 1060; *Soffar*, 237 at 452.

■ " '*Teague* provides that a new constitutional rule can apply retroactively on federal collateral review only if the new rule (1) puts certain kinds of primary, private conduct beyond the power of the criminal law-making authority to proscribe or (2) is a rule of procedure that is implicit in the concept of ordered liberty.' " *Jackson*, 217 F.3d at 364 (quoting *Fisher*, 169 F.3d at 306); *see O'Dell*, 521 U.S. at 157, 117 S.Ct. 1969; *Teague*, 489 U.S. at 311, 109 S.Ct. 1060. "The second *Teague* exception 'is reserved for watershed rules of criminal procedure that implicate the fundamental fairness and accuracy of the proceeding.' " *Jackson*, 217 F.3d at 364 (quoting *Fisher*, 169 F.3d at 306); *see O'Dell*, 521 U.S. at 157, 117 S.Ct. 1969; *Teague*, 489 U.S. at 311, 109 S.Ct. 1060. In *Jackson*, however, the Fifth Circuit recognized a "third narrow exception to *Teague*," applicable when the issue presented is one that could only be raised on collateral, as opposed to direct, review. *See* 217 F.3d at 364. "When an alleged constitutional right is susceptible of vindication *only* on habeas review, application of *Teague* to bar full consideration of the claim would effectively foreclose any opportunity for the right ever to be recognized." *Id.* (em-

phasis in original). By their nature, claims challenging the revocation of parole may be raised only in a petition for writ of habeas corpus, as no direct review is available. *See Board of Pardons & Paroles ex rel. Keene v. Court of Appeals for the Eighth Dist.*, 910 S.W.2d 481, 483 (Tex. Crim.App.1995) (a claim that parole has been unlawfully revoked must be brought to the attention of the convicting court via an Article 11.07 application for writ of habeas corpus); *see also Campos v. Johnson*, 958 F.Supp. 1180, 1186 (W.D.Tex. 1997); *Flores v. Johnson*, 957 F.Supp. 893, 904 (W.D.Tex.1997). Hence, notwithstanding *Teague*, this court is obliged to consider the merits of Alexander's claims.

■ Furthermore, the retroactivity analysis of *Teague* applies only to new rules of criminal procedure, not to changes in the substantive law. *See Bousley v. United States*, 523 U.S. 614, 620, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998) (holding that *Teague* applies only to procedural rules and not to decisions of the Supreme Court deciding the meaning of criminal statutes); *Teague*, 489 U.S. at 310, 109 S.Ct. 1060; *Reyes–Requena*, 243 F.3d at 905; *United States v. McPhail*, 112 F.3d 197, 199 (5th Cir.1997). "*Teague* stands for the proposition that new constitutional rules of criminal procedure will not be announced or applied on collateral review." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). "Because the principle underlying *Teague* 's non-retroactivity doctrine is to apply the law in effect at the time a prisoner's conviction became final and because a court's interpretation of a substantive criminal statute generally

when it found the Texas Harassment Statute to be unconstitutional, as such a result was clearly foreshadowed by the Fifth Circuit's opinion in *Kramer v. Price* and the Court of Criminal Appeals' prior decision in *May v. State,* which both found a predecessor harass-

ment statute to be unconstitutional due to many of the same deficiencies. *See* 712 F.2d 174, 178 (5th Cir.1983), *aff'd*, 723 F.2d 1164 (5th Cir.1984); 765 S.W.2d 438, 439–40 (Tex. Crim.App.1989).

declares what the statute meant from the date of its enactment, not from the date of the decision, the rationale of *Teague* does not preclude retroactive application of [statutory decisions]." *United States v. McKie,* 73 F.3d 1149, 1151 (D.C.Cir.1996). The distinction between substance and procedure is critical in the habeas context. *See Bousley,* 523 U.S. at 620, 118 S.Ct. 1604. As the Supreme Court explained in *Bousley:*

> The *Teague* doctrine is founded on the notion that one of the "principal functions of habeas corpus [is] 'to assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted.'" Consequently, unless a new rule of criminal procedure is of such a nature that "without [it] the likelihood of an accurate conviction is seriously diminished," there is no reason to apply the rule retroactively on habeas review. By contrast, decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct "'beyond the power of the criminal law-making authority to proscribe,'" necessarily carry a significant risk that a defendant stands convicted of "an act that the law does not make criminal."

*Id.* (citations omitted). Therefore, *Teague* is inapplicable and poses no impediment to Alexander's collateral attack on the revocation of his parole.

### E. *Constitutionality of the Texas Harassment Statute*

Based on the evidence adduced at the parole revocation hearing, at the time his parole was revoked, the only law Alexander arguably could have violated was the 1993 Texas Harassment Statute, as set forth in Section 42.07 of the Texas Penal Code.[6] The stalking portion of the statute provided:

> (a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he:
>
> \* \* \* \* \* \*
>
> (7) (A) on more than once occasion engages in conduct directed specifically toward the other person, including following that person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass that person;
>
> (B) on at least one of those occasions by acts or words threatens to inflict bodily injury on that person or to commit an offense against that person, a member of that person's family, or that person's property; and
>
> (C) on at least one of those occasions engages in the conduct after the person toward whom the conduct is specifically directed has reported to a law enforcement agency the conduct described by this subdivision.

TEX. PEN. CODE ANN. § 42.07(a)(7) (West 1994).

In September 1996, the Texas Court of Criminal Appeals held the stalking statute to be "unconstitutionally vague on its face." *Long,* 931 S.W.2d at 287, 297. The Court of Criminal Appeals relied in part on a prior Fifth Circuit decision that found the predecessor harassment statute to be "unconstitutional on its face for vagueness." *Kramer,* 712 F.2d at 178. The Fifth Circuit explained the rationale behind the void for vagueness concept:

---

**6.** While Johnson's counsel pointed out at the evidentiary hearing that a civil statute also imposes liability for stalking, it did not become effective until June 14, 1995, after Alex-ander's parole revocation proceeding had concluded. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 85.001–85.006 (West 2000).

An enactment is void for vagueness under the due process clause of the fourteenth amendment if it fails to draw reasonably clear lines between lawful and unlawful conduct. Vague statutes fail to provide citizens with fair notice or warning of statutory prohibitions so that they may act in a lawful manner.

The infirmities of vagueness, however, extend beyond the lack of fair notice. The absence of a determinate standard gives police officers, prosecutors, and the triers of fact unfettered discretion to apply the law, and thus there is a danger of arbitrary and discriminatory enforcement.

*Id.* at 176 (citations and footnotes omitted). The court further noted that when a statute is capable of reaching first amendment freedoms, the doctrine of vagueness " 'demands a greater degree of specificity.' " *Id.* at 177 (quoting *Smith v. Goguen,* 415 U.S. 566, 573, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974)).

The court in *Kramer* relied on a Supreme Court decision striking down as unconstitutionally vague an ordinance containing the word "annoy." *See Coates v. City of Cincinnati,* 402 U.S. 611, 614, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). The city ordinance at issue in *Coates* made it a criminal offense for "three or more persons to assemble ... on any of the public sidewalks, street corners, vacant lots, or mouths of alleys, and there conduct themselves in a manner annoying to persons passing by." *See id.* at 611 n. 1, 91 S.Ct. 1686. The Supreme Court observed that the word "annoy," as used in the Cincinnati ordinance, was vague, as "[c]onduct that annoys some people does not annoy others." *Id.* at 614, 91 S.Ct. 1686. "Thus, the ordinance [was] vague, not in the sense that it require[d] a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the

sense that no standard of conduct [was] specified at all." *Id.* The ordinance also did not specify, and the Ohio Supreme Court "did not indicate upon whose sensitivity a violation does depend—the sensitivity of the judge or jury, the sensitivity of the arresting officer, or the sensitivity of a hypothetical reasonable man." *Id.* at 613, 91 S.Ct. 1686. The inherent vagueness in attempting to define what annoys people and the failure to specify whose sensitivities were relevant compelled the Supreme Court to conclude that the ordinance was unconstitutionally vague. *Id.* at 614, 91 S.Ct. 1686; *see Kramer,* 712 F.2d at 178. In *Kramer,* the Fifth Circuit determined that the pre–1983 harassment statute suffered from the same infirmities as the ordinance in *Coates. See id.* The court noted that the Texas courts had made no attempt to construe the terms "annoy" and "alarm" in a manner which lessened their inherent vagueness and had refused to construe the statute to indicate whose sensibilities had to be offended. *See id.* Following *Kramer,* the Texas Court of Criminal Appeals held the pre–1983 version of § 42.07 to be unconstitutional. *See May,* 765 S.W.2d at 439–40.

In *Long,* the Texas Court of Criminal Appeals noted that the stalking provision contained in § 42.07(a)(7)(A) appeared to have the same defects as those noted by the Fifth Circuit in *Kramer. See* 931 S.W.2d at 289. The court observed that the words "annoy" and "alarm" were still included in the statute and were joined by the additional words "harass," "abuse," "torment," and "embarrass," which were also subject to uncertainties of meaning. *See id.* Thus, the addition of those words did not limit the vagueness originally generated by "annoy" and "alarm." *See id.* Moreover, although the stalking provision required that the conduct be "specifically directed" toward a particular person, the statute covered any conduct in which a

person could possibly engage. *See id.* Hence, the court found that this language was even more expansive that the pre–1983 harassment statute, which proscribed "communications by telephone or in writing." *See id.* Thus, any limiting function served by the words "specifically directed" was offset by the 1993 statute's expansive coverage of all conduct. *See id.* Finally, the court concluded that the stalking provision, like the pre–1983 statute, did not include a reasonable person standard, rejecting the notion that the term "reasonably likely" incorporated such a standard into the statute. *See id.* at 289–90. In fact, the stalking provision contained the words "that person," which specified the perspective as being that of the complainant rather than of a hypothetical reasonable person. *See id.*

The telephone harassment portion of the statute, to the extent it proscribes "repeated telephone communications ... in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another," appears to have the same constitutional deficiencies.[7] While two reported Texas Court of Appeals decisions have found the telephone harassment provision to pass constitutional muster, at least to the extent it prohibits "causing the telephone of another to ring repeatedly" and repeated anonymous telephone calls, neither the Texas Court of Criminal Appeals nor the Fifth Circuit has ever ruled on the constitutionality of this part of the statute. *See DeWillis v. State,* 951 S.W.2d 212, 217 (Tex.App.—Houston [14th Dist.] 1997, no pet.); *Bader v. State,* 773 S.W.2d 769, 770 (Tex.App.—Corpus Christi 1989,

pet. ref'd). The terms "harass, annoy, alarm, abuse, torment, embarrass, or offend" would appear to be equally vague as the terms "harass, annoy, alarm, abuse, torment, or embarrass" used in the stalking provision that the Court of Criminal Appeals found to be constitutionally deficient in *Long. See* 931 S.W.2d at 289. Moreover, in *May,* the Texas Court of Criminal Appeals specifically found a telephone harassment provision of the pre–1983 statute to be unconstitutional, holding "the inherent vagueness of the statute as it then existed, in attempting to define what annoys and alarms people, and its failure to specify whose sensitivities are relevant, causes it be to unconstitutionally vague." 765 S.W.2d at 440. As the Supreme Court pointed out in *Coates,* the Fifth Circuit recognized in *Kramer,* and the Court of Criminal Appeals acknowledged in *Long,* "[c]onduct that annoys some people does not annoy others." *Kramer,* 712 F.2d at 178 (citing *Coates,* 402 U.S. at 614, 91 S.Ct. 1686); *see Long,* 931 S.W.2d at 289.

In addition, as in *Coates, Kramer,* and *Long,* the statute does not specify whose sensitivities are relevant. *See Coates,* 402 U.S. at 613, 91 S.Ct. 1686; *Kramer,* 712 F.2d at 177–78; *Long,* 931 S.W.2d at 289–90. The "another" referred to in the statute is no more definite than the "persons passing by" found to be overly vague in *Coates. See* 402 U.S. at 613, 91 S.Ct. 1686. As in *Long,* this provision does not appear to incorporate a reasonable person standard. *See* 931 S.W.2d at 290. Although the Court of Appeals in *DeWillis* concluded that this "provision of the statute also

---

7. The provision reads in its entirety:
 (a) A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he:

 \* \* \* \* \* \*

 (4) causes the telephone of another to ring repeatedly or makes repeated telephone communications anonymously or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.
 TEX. PEN. CODE ANN. § 42.07(a)(4) (West 1994).

contains a reasonable person standard in the word 'another,'" in the very next sentence, the court stated, "it is the recipient of the telephone calls whose sensibilities must be offended." See 951 S.W.2d at 216. Such incongruous positions were rejected in Long, where the court found that a reasonable person standard could not be implied in the stalking provision. See 931 S.W.2d at 290. In any event, because Tamitha stated at the preliminary hearing that Alexander's repeated telephone calls about visiting the baby did not really bother her and testified at the revocation hearing that she did not view the calls as harassing, Alexander's conduct would not be actionable even under DeWillis. See 951 S.W.2d at 216. Moreover, unlike the repeated ringing and anonymous calls which the court in DeWillis found not to be constitutionally protected under the First Amendment, "repeated telephone communications" that are "reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another" would appear to implicate the First Amendment. See id. at 217.

Under Texas law, an "unconstitutional statute is void from its inception and cannot provide a basis for any right or relief." Reyes, 753 S.W.2d at 383; accord Jefferson, 751 S.W.2d at 502–03; see Rose v. State, 752 S.W.2d 529, 553 (Tex.Crim.App. 1987); Cartier, 58 S.W.3d at 758. Therefore, the Texas courts routinely reversed convictions under the stalking statute after the Texas Court of Criminal Appeals' decision in Long, which held it to be unconstitutionally vague. See, e.g., Ravenbark v. State, 942 S.W.2d 711 (Tex.App.—Houston [14th Dist.] 1997, no pet.); Atkinson v. State, No. 03–96–00497–CR, 1997 WL 304176, at *1 (Tex.App.—Austin June 5, 1997, no writ); Golson v. State, 931 S.W.2d 705, 706 (Tex.App.—Corpus Christi 1996, no pet.). In 1997, the Texas Legislature enacted a revised stalking statute, incorpo-

rating many of the suggestions made by the court in Long, which, to date, has been found to be constitutional. See Clements v. State, 19 S.W.3d 442, 450–51 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

Johnson contends that Alexander's constitutional challenge to the stalking statute fails because "[i]t is still not clear that the retroactivity of the Long decision is constitutionally required," citing the United States Supreme Court's opinion in Fiore v. White. See 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001). In Fiore, the Court granted certiorari to determine "when, or whether, the Federal Due Process Clause requires a State to apply a new interpretation of a state criminal statute retroactively to cases on collateral review." Id. at 226, 121 S.Ct. 712. In that case, after Fiore's conviction became final, the Pennsylvania Supreme Court interpreted the statute at issue for the first time, concluding that Fiore's conduct did not fall within its scope. See id. The Supreme Court certified a question to the Pennsylvania Supreme Court asking whether its decision interpreting the statute was a new interpretation or, instead, was a correct statement of the law when Fiore's conviction became final. See id. at 226, 228, 121 S.Ct. 712. The Pennsylvania Supreme Court replied that its decision "merely clarified" the statute as properly interpreted at the time of Fiore's conviction. Id. at 228, 121 S.Ct. 712. Hence, the response "made clear that retroactivity is not at issue." Id. at 226, 121 S.Ct. 712. Consequently, the United States Supreme Court concluded that Fiore's continued incarceration violated the Due Process Clause and reversed the Third Circuit's decision denying him collateral relief. Id. at 228–29, 121 S.Ct. 712. Thus, Fiore does not appear to support Johnson's position.

■ Moreover, in Long, the Texas Court of Criminal Appeals did not merely

interpret the statute in question but declared it to be unconstitutional on its face. *See* 931 S.W.2d at 297. "[A] challenge that a statute is facially unconstitutional affects the jurisdiction of a court to render judgment against a defendant." *Cartier,* 58 S.W.3d at 758. Stated more artfully, "an unconstitutional statute is stillborn." *Reyes,* 753 S.W.2d at 383. Hence, in *Long,* " '[t]he court did not annul the statute, for it was already lifeless. It had been fatally smitten by the Constitution at its birth.' " *Id.* (quoting *Ex parte Bockhorn,* 62 Tex. Crim. 651, 138 S.W. 706, 707 (1911)). In addition, because the decision in *Long* was grounded on the Fifth Circuit's decision in *Kramer* and its own prior decision in *May,* holding the predecessor harassment statute to be unconstitutional, the court did not make a new interpretation, but rather announced a result dictated by prior precedent. *See Long,* 931 S.W.2d at 289–90 (citing *Kramer,* 712 F.2d at 178); *May,* 765 S.W.2d at 440. Hence, Alexander's continued confinement violates his right to due process, as the State is precluded from relying on a statute that was unconstitutional on its face at the time his parole was revoked as the basis for maintaining his incarceration.

## V. *Conclusion*

Alexander's petition for writ of habeas corpus is not time-barred, as principles of equitable tolling apply. His claims are exhausted, and neither *Teague* nor *Fiore* forecloses the court from considering them. The only ground upon which Alexander's parole was revoked, violation of the 1993 stalking statute, provided no basis for such an action, as the statute has been declared unconstitutional on its face. Therefore, Alexander "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Accordingly, Alexander's petition for a writ of habeas corpus is GRANTED.

The order revoking Alexander's parole is vacated, and his parole is reinstated. The State of Texas shall release Alexander within ten (10) days of receipt of this order. He shall receive credit toward his sentence for the period of time he was released on parole prior to its revocation.