FILED IN
COURT OF CRIMINAL APPEALS

February 2, 2015

ABEL ACOSTA, CLERK

WR-82, 102-01
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/31/2015 12:04:06 PM
Accepted 2/2/2015 1:01:13 PM
ABEL ACOSTA
CLERK

**WR-82,102-01**

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## EX PARTE

## CURTIS FOURNIER,
*Applicant*

On Application for a Writ of Habeas Corpus in Cause Number 1151921-A
351st District Court of Harris County, Texas

## APPLICANT'S BRIEF

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

SARAH V. WOOD
Assistant Public Defender
Harris County, Texas
Texas Bar Number 24048898
1201 Franklin, 13th Floor
Houston Texas 77002
713.368.0016 (phone)
713.368.9278 (fax)
Sarah.Wood@pdo.hctx.net

# IDENTITY OF PARTIES AND COUNSEL

Applicant:                                              Curtis Fournier


Prosecutors for writ proceedings:            Roe Wilson (before this Court)
                                                            Sharon Chu (in the trial court)
                                                            Assistant District Attorneys
                                                            Harris County, Texas
                                                            1201 Franklin, Suite 600
                                                            Houston, Texas 77002


Defense counsel for writ proceedings      Sarah V. Wood
                                                            Assistant Public Defender
                                                            Harris County Public Defender's Office
                                                            1201 Franklin, 13th floor
                                                            Houston, Texas 77002

Presiding Judge:                                     Hon. Mark Kent Ellis
                                                            351st District Court
                                                            Harris County, Texas
                                                            1201 Franklin, 14th floor
                                                            Houston, Texas 77002

# TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................................ 1

Table of Contents ...................................................................................................... 2

Index of Authorities .................................................................................................. 4

Statement of the Case ............................................................................................... 7

Statement Regarding Oral Argument ...................................................................... 7

Issue Presented .......................................................................................................... 7

Statement of Facts ..................................................................................................... 8

Summary of the Argument ....................................................................................... 9

Argument ................................................................................................................... 11

   1.  Void from inception ......................................................................................... 12

      a.  Historic origins .......................................................................................... 12

      b.  National consensus .................................................................................... 13

      c.  Accord from the Court of Criminal Appeals .......................................... 15

      d.  Consistency across Texas ........................................................................... 17

      e.  Required by the Texas Constitution ........................................................ 18

   2.  Non-criminal behavior ................................................................................... 20

a. Dictated by simple, logical rules ................................................................20

b. No lesser-included offenses....................................................................21

c. No guilty intent ....................................................................................25

3. Remedies ...............................................................................................26

a. Historic examples ..................................................................................27

b. Compensation is not an issue for this Court..........................................28

c. Immunity from procedural default.........................................................30

d. Clearing one's name...............................................................................31

4. Framing the claim.....................................................................................32

a. *Herrera*...............................................................................................32

b. *Schlup*................................................................................................34

c. As a unique category..............................................................................37

Certificate of Service and Compliance .............................................................39

# INDEX OF AUTHORITIES

## Cases

*Alexander v. Cockrell*, 294 F.3d 626 (5th Cir. 2002) ...................................................................37

*Alexander v. Johnson*, 217 F. Supp. 2d 780 (S.D. Tex. 2001), aff'd sub nom. *Alexander v.
Cockrell*, 294 F.3d 626 (5th Cir. 2002) ...................................................................32

*Cartier v. State*, 58 S.W.3d 756 (Tex. App.—Amarillo 2001, pet. ref'd) .............................18

*Casares v. State*, 768 S.W.2d 298 (Tex. Crim. App. 1989) ...................................................18

*Coleman v. Mitnick*, 137 Ind. App. 125, 202 N.E.2d 577, 579 (1964) .................................27

*Davis v. U. S.*, 417 U.S. 333 (1974) ........................................................................................38

*Erazo v. State*, 260 S.W.3d 510 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) ......19

*Ex parte Bockhorn*, 62 Tex. Crim. 651, 138 S.W. 706 (1911) ......................................... 14, 33

*Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996) .................................................32

*Ex parte Franklin*, 72 S.W.3d 671 (Tex. Crim. App. 2002) ...................................................34

*Ex parte Mable,* 443 S.W.3d 129 (Tex. Crim. App. 2014 .......................................21, 23, 25

*Ex parte Siebold*, 100 U.S. 371 (1879). ...................................................................................20

*Ex parte Spencer*, 337 S.W.3d 869 (Tex. Crim. App. 2011) ...................................................34

*Ex parte Tuley*, 109 S.W.3d 388 (Tex. Crim. App. 2002) ......................................................30

*Ex parte Watson*, 306 S.W.3d 259 (Tex. Crim. App. 2009) ...................................................22

*Fite v. King*, 718 S.W.2d 345 (Tex.App.—Dallas 1986), ref. n.r.e. ......................................17

*Garcia v. State*, 751 S.W.2d 507 (Tex. Crim. App. 1988) ......................................................16

*Golson v. State*, 931 S.W.2d 705 (Tex. App.—Corpus Christi 1996), on reh'g (Oct. 3, 1996) ................................................................................................................ 17

*Hernandez v. State*, 774 S.W.2d 319 (Tex. App.—Dallas 1989, pet. ref'd) ....................... 18

*Herrera v. Collins*, 506 U.S. 390 (1993) .............................................................................. 31

*Hiett v. United States*, 415 F.2d 664 (5th Cir. 1969) ..................................................... 24, 37

*Hoffman v. State*, 751 S.W.2d 512 (Tex. Crim. App. 1988) ................................................. 16

*Jefferson v. State*, 751 S.W.2d 502 (Tex. Crim. App. 1988) ............................................... 16

*Long v. State*, 931 S.W.2d 285 (Tex. Crim. App. 1996) ..................................................... 36

*Lowry v. State*, 671 S.W.2d 601 (Tex. App.—Dallas 1984), aff'd in part, rev'd in part, 692 S.W.2d 86 (Tex. Crim. App. 1985) .......................................................................... 17

*Marbury v. Madison*, 5 U.S. 137 (1803) ............................................................................. 11

*McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013) .................................................................... 30

*Ravenbark v. State*, 942 S.W.2d 711 (Tex. App.—Houston [14th Dist.] 1997, no pet.) .. 18

*Reyes v. State*, 753 S.W.2d 382 (Tex. Crim. App. 1988) ..................................................... 16

*Reyes-Requena v. United States,* 243 F.3d 893 (5th Cir. 2001) ........................................... 38

*Rodriguez v. State*, 71 S.W.3d 800 (Tex. App.—Texarkana 2002, no pet.) ........................ 18

*Satterfield v. Crown Cork & Seal Co., Inc.*, 268 S.W.3d 190 (Tex. App.—Austin 2008, no pet.) ........................................................................................................................... 19

*Schuster v. State*, 435 S.W.3d 362 (Tex. App.—Houston [1st Dist.] 2014, no pet.) .......... 18

*Sullivan v. State*, 986 S.W.2d 708, 713 (Tex. App.—Dallas 1999, no pet.) ....................... 18

*Wilson v. State,* 825 S.W.2d 155 (Tex. App.—Dallas 1992, pet. ref'd) .............................. 26

**Statutes**

Tex. Civ. Prac. & Rem. Code § 103.001.................................................................28

Tex. Civ. Prac. & Rem.Code § 103.051...................................................................28

Tex. Crim. Proc. Code § 11.07...............................................................................30

Tex. Pen. Code § 1.03............................................................................................20

Tex. Pen. Code § 33.021........................................................................................21

**Other Authorities**

16A Am Jur 2d Constitutional Law § 195 ....................................................... 14, 25

Alexander Hamilton, The Federalist No. 78. .........................................................12

CRIME, Black's Law Dictionary (9th ed. 2009)....................................................11

Tex. Const. art. I, § 29 ..........................................................................................18

## STATEMENT OF THE CASE

After this Court held in *Ex parte Lo,* 424 S.W.3d 10 (Tex. Crim. App. 2013), that § 33.021(b) of the Online Solicitation of a Minor statute was unconstitutional, the applicant filed an application for writ of habeas corpus challenging his conviction (C.R. at 2). The State agreed that the applicant was both actually innocent and entitled to habeas relief (C.R. at 25, 35). On August 13, 2014, the district court adopted the State's proposed findings and recommended relief be granted (C.R. at 35). On October 1, 2014, this Court ordered the parties to brief the issue of "whether a person who was convicted under a statute that was later declared unconstitutional is 'actually innocent,' as this Court has interpreted that term."

## STATEMENT REGARDING ORAL ARGUMENT

This Court has stated that oral argument is not permitted. However, because this is a thought-provoking issue of first impression, the applicant's counsel would be pleased to present argument if this Court so desires.

## ISSUE PRESENTED

Whether a person who was convicted under a statute that was later declared unconstitutional is "actually innocent," as this Court has interpreted that term.

## STATEMENT OF FACTS

On April 17, 2008, Mr. Fournier was indicted for the now-defunct offense of online solicitation of a minor under Texas Penal Code § 33.021(b) (C.R. at 56). On August 6, 2008, he pled guilty in exchange for the State's recommendation of punishment at two years confinement in prison (C.R. at 45).

Following this Court's decision in *Ex parte Lo*, counsel from the Harris County Public Defender's Office filed an application for writ of habeas corpus as petitioner on July 15, 2014 (C.R. at 2). The State filed an answer asserting, "Because the statute upon which the primary prosecution was predicated and the applicant convicted was held unconstitutional in *Lo,* the applicant is actually innocent of the instant offense and entitled to habeas relief." (C.R. at 25). The same language was adopted by the district court in its findings which recommended relief (C.R. at 35).

The State filed a brief in this case in which it declined to take a firm position on the issue of actual innocence, instead concluding "that there is cogent argument for both positions" and "the State can only present the relevant law and respectfully request a definitive holding that the State may follow." (State's brief at 23).

## SUMMARY OF THE ARGUMENT

A person convicted under a facially unconstitutional statute is "actually innocent" as this Court has interpreted that term. In accordance with the fundamental principles upon which our government was formed, an unconstitutional law is void from inception. This concept harkens back to the 18th century when our founders determined that if the legislature enacts a law in violation of the constitution, the judiciary must strike it down, and it must be considered a legal nullity in toto. To permit an unconstitutional law to possess force would upset checks and balances, give the legislature dominant power, and dilute the Constitution.

For conduct to be criminal, it must be in violation of the law. If an unconstitutional law is inoperative as if never passed, then the conduct it defines cannot be criminal. Simple logic dictates that a person convicted under an unconstitutional statute has therefore committed only non-criminal acts.

This Court has held that for a person to be actually innocent, they must not only be innocent under the charged offense, but also under any lesser-included offenses. Additional analysis is therefore required to determine whether the facts proven in the indictment constitute proof of another crime. It should be noted that it is improper and unwieldy to inquire as to whether an applicant may be guilty of any separate, extraneous offenses. If, as in this case under § 33.021(b), no other crimes are shown, then an actual innocence claim is appropriate.

Under the previously established legal framework for actual innocence claims, those with convictions under unconstitutional statutes can make the required showing under both *Herrera* and *Schlup*. Although such claims do not fit neatly under *Herrera* since they are not based on error-free proceedings and they have no need to present new evidence, they are likely able to prove by clear and convincing evidence that they are actually innocent. Under *Schlup*, however, these claims can be analyzed quite effectively. It would seem an efficient matter to determine 1) the existence of a constitutional error, in the form of a void statute, and 2) that the claimant is "probably" innocent. Additionally, this Court might consider the approach of a federal court discussed within that analyzed such a claim without reference to either *Herrera* or *Schlup*, concluding logically that since the law was unconstitutional, the applicant was "by necessity" actually innocent.

Once the judiciary has struck down a criminal law as facially unconstitutional, fundamental principles of American jurisprudence logically dictate that those burdened with convictions are actually innocent.

In *Marbury v. Madison*, Chief Justice John Marshall established the authority of judicial review in the United States. Striking down an unconstitutional statute, Marshall said, "is of the very essence of judicial duty." *Marbury v. Madison*, 5 U.S. 137 (1803). It is through this method, ingeniously crafted by our founders, that the judicial branch of government acts as a check on the legislature and preserves the supremacy of the state and federal constitutions.

If this Court were to hold that people convicted under an unconstitutional statute remained guilty, then as Marshall warned, "This doctrine would subvert the very foundation of all written constitutions. It would declare that an act, which, according to the principles and theory of our government, is entirely void; is yet, in practice, completely obligatory. It would declare, that if the legislature shall do what is expressly forbidden, such act, notwithstanding the express prohibition, is in reality effectual. It would be giving to the legislature a practical and real omnipotence, with the same breath which professes to restrict their powers within narrow limits." *Id.* at 178.

This Court upheld the Constitution in *Ex parte Lo*, striking down Texas Penal

Code § 33.021(b) as facially unconstitutional in violation of the First Amendment and refused, as Marshall would say, to "close their eyes on the Constitution." *Id.* at 178. It is important to remember that the holding in this case will dictate the guilt or innocence—not only of those convicted under § 33.021(b)—but of all citizens affected by future unconstitutional statutes.



## 1.  Void from inception

The first step in determining guilt or innocence when a law has been declared unconstitutional is to determine the status of that law. It is axiomatic that behavior cannot be criminal unless it is prohibited by the law. Black's Law Dictionary defines "crime" as "an act that the law makes punishable; the breach of a legal duty treated as the subject-matter of a criminal proceeding." CRIME, Black's Law Dictionary (9th ed. 2009). It is well-established that a facially unconstitutional criminal law creates no legal duties.

---

### a.  Historic origins

In *Marbury v. Madison*, Chief Justice John Marshall examined "whether an act, repugnant to the constitution, can become the law of the land." *Id.* at 176. To decide, he said it was "only necessary to recognize certain principles, supposed to have been long and well established [even in 1803]…" *Id.* Marshall resolved, "Certainly all those who have framed written constitutions contemplate them as forming the fundamental

and paramount law of the nation, and consequently the theory of every such government must be, that an act of the legislature, repugnant to the constitution, is void." 5 U.S. at 177.

In The Federalist No. 78, published in 1788, Alexander Hamilton spoke of "the injury of the private rights of particular classes of citizens, by unjust and partial laws," warning that "no man can be sure that he may not be tomorrow the victim of a spirit of injustice." Alexander Hamilton, The Federalist No. 78. He proclaimed that it is the courts, "whose duty it must be to declare all acts contrary to the manifest tenor of the Constitution void. Without this, all the reservations of particular rights or privileges would amount to nothing." *Id.*

Chief Justice Marshall observed in *Marbury*, "If an act of the legislature, repugnant to the constitution, is void, does it, notwithstanding its invalidity, bind the courts, and oblige them to give it effect? Or, in other words, though it be not law, does it constitute a rule as operative as if it was a law? This would be to overthrow in fact what was established in theory; and would seem, at first view, an absurdity too gross to be insisted on." *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

_____

### b. National consensus

The legal encyclopedia *American Jurisprudence*, a staple of law libraries across the country, states that "No one is bound to obey an unconstitutional law."

The general rule is that an unconstitutional statute, whether federal or

state, though having the form and name of law, is in reality no law but is wholly void and ineffective for any purpose. Since unconstitutionality dates from the time of its enactment and not merely from the date of the decision so branding it, an unconstitutional law, in legal contemplation, is as inoperative as if it had never been passed and never existed; that is, it is void ab initio. **Such a statute leaves the question that it purports to settle just as it would be had the statute not been enacted**.

Since an unconstitutional law is void, it follows that generally the statute imposes no duties, confers no rights, creates no office or liabilities, bestows no power or authority on anyone, affords no protection, is incapable of creating any rights or obligations, does not allow for the granting of any relief, and justifies no acts performed under it.

Once a statute is determined to be unconstitutional, no private citizen or division of the state may take any further action pursuant to its provisions. A contract that rests on an unconstitutional statute creates no obligation to be impaired by subsequent legislation. **No one is bound to obey an unconstitutional law**, and no courts are bound to enforce it. A law contrary to the United States Constitution may not be enforced. Once a statute has been declared unconstitutional, courts thereafter have no jurisdiction over alleged violations. Persons convicted and fined under a statute subsequently held unconstitutional may recover the fines paid.

16A Am Jur 2d Constitutional Law § 195 (internal citations removed) (emphasis added).

### c. Accord from the Court of Criminal Appeals

Marshall's so-called "gross absurdity" of giving effect to an unconstitutional statute has long been recognized by this Court as well. In 1911, it held, "An unconstitutional statute is void from its inception." *Ex parte Bockhorn*, 62 Tex. Crim. 651, 652, 138 S.W. 706, 707 (1911). To justify this view, this Court revealed its sources which are well-stated and worth reading here:

> Mr. Cooley, in his work on Constitutional Limitations, uses this language: "When a statute is adjudged to be unconstitutional, it is as if it had never been. Rights cannot be built up under it. Contracts which depend upon it for their consideration are void. It constitutes a protection to no one who has acted under it, and **no one can be punished for having refused obedience to it before the decision was made**."

> In the case of *Norton v. Shelby County*, supra, Justice Field, of the Supreme Court of the United States, says in regard to an unconstitutional statute: "It confers no rights. It embodies no duties. It affords no protection. It creates no office. It is, in legal contemplation, **as inoperative as though it never had been passed.**"

> In the case of *Boales v. Ferguson*, supra, the court uses this language: "The Baker law was enacted in violation of the Constitution. It was never enforced, and the decision of this court, in Trumble v. Trumble [37 Neb. 340, 55 N.W. 869], was a mere judicial declaration of a pre-existing fact. **The court did not annul the statute, for it was already lifeless. It had been fatally smitten by the Constitution at its birth**."

> In the case of *Seneca Min. Co. v. Secretary of State*, supra, in passing on this question, the court said: "If the lawmaking power is prohibited from enacting a law, and in disregard of such prohibition it goes through the

forms of enacting a law, such enactment is of **no more force or validity than a piece of blank paper**, and is utterly void, and powers subsequently conferred upon the Legislature by an amendment to the Constitution do not have a retroactive effect and give validity to such void law."

In the case of *State v. Tufly*, supra, it was said: "An act of the Legislature which is not authorized by the state Constitution at the time of its passage, is absolutely null and void. It is a misnomer to call such an act a law. It has no binding authority, no validity, no existence. **It is as if it had never been enacted, and is to be regarded as never having been possessed of any legal force or effect.** The act being void, no subsequent adoption of an amendment of the Constitution authorizing the Legislature to provide for such investment would have the effect to infuse life into a thing that never had any existence."

*Bockhorn*, 62 Tex. Crim. at 652-53. This vibrant, uncompromising language often arises at the topic of an unconstitutional statute. Marshall would have approved of such enthusiasm to protect the independence of the judiciary and the supremacy of the Constitution.

This Court echoed the same sentiment many times throughout the years that followed: "A void law affords no basis for a criminal prosecution." *Ex parte Halsted*, 147 Tex. Crim. 453, 457, 182 S.W.2d 479, 482 (1944). "An unconstitutional statute is void from its inception and cannot provide a basis for any right or relief." *See, e.g. Jefferson v. State*, 751 S.W.2d 502 (Tex. Crim. App. 1988), overruled on other grounds by *Lapasnick v. State*, 784 S.W.2d 366 (Tex. Crim. App. 1990) (citing 12 Tex.Jur.3d, Constitutional Law, § 41, at 548); *Hoffman v. State*, 751 S.W.2d 512 (Tex. Crim. App. 1988)*; Beddoe v. State*, 752 S.W.2d 564, 565 (Tex. Crim. App. 1988); *Garcia v. State*, 751

16

S.W.2d 507 (Tex. Crim. App. 1988); *Casares v. State*, 768 S.W.2d 298, 299 (Tex. Crim. App. 1989).

In *Reyes v. State* in 1988, this Court again cited a wide array of cases and legal authority to bolster its reminder that an unconstitutional statute is void from inception. *Reyes v. State*, 753 S.W.2d 382, 383 (Tex. Crim. App. 1988). It commented that "an unconstitutional statute in the criminal area is to be considered no statute at all, and that a statute unconstitutional in toto falls and carries with it all remedies provided therein." *Id.* (and citing from various legal encyclopedias, Texas and federal cases and out-of-state cases including *Melbourne Corp. v. City of Chicago*, 76 Ill.App.3d 595, 31 Ill.Dec. 914, 394 N.E.2d 1291 (1979); *Shirley v. Getty Oil Co.*, 367 So.2d 1388 (Ala.1979); *People v. Nicholson*, 61 Ill.App.3d 621, 18 Ill.Dec. 427, 377 N.E.2d 1063 (1978); *Stanton v. Lloyd Hammond Produce Farms*, 400 Mich. 135, 253 N.W.2d 114 (1977); *Ulrich v. Beatty*, 139 Ind.App. 174, 216 N.E.2d 737, reh. den. 139 Ind.App. 174, 217 N.E.2d 858 (1966); *Johnson v. State*, 271 Md. 189, 315 A.2d 524 (1974)).

---

### d. Consistency across Texas

Texas intermediate courts have also consistently held that an unconstitutional law is void from inception. "As a general rule, if a statute is unconstitutional, it amounts to nothing and accomplishes nothing and is no law at all." *In re Johnson*, 554 S.W.2d 775, 787 (Tex. Civ. App.—Corpus Christi 1977), writ refused n.r.e., 569 S.W.2d 882 (Tex. 1978). "An unconstitutional statute is void from inception and will sustain

neither a conviction nor a plea of prior jeopardy." *Lowry v. State*, 671 S.W.2d 601, 604 (Tex. App.—Dallas 1984), aff'd in part, rev'd in part, 692 S.W.2d 86 (Tex. Crim. App. 1985); *and see, e.g. Fite v. King*, 718 S.W.2d 345 (Tex.App.—Dallas 1986), ref. n.r.e. (unconstitutional act confers no right, imposes no duty, and affords no protection); *Golson v. State*, 931 S.W.2d 705, 706 (Tex. App.—Corpus Christi 1996), on reh'g (Oct. 3, 1996) (noting that the stalking statute was void from inception because it had been held facially unconstitutional); *Ravenbark v. State*, 942 S.W.2d 711 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (rendering a verdict of acquittal for a person convicted under the stricken stalking statute); *Sullivan v. State*, 986 S.W.2d 708, 713 (Tex. App.—Dallas 1999, no pet.); *Cartier v. State*, 58 S.W.3d 756, 759 (Tex. App.—Amarillo 2001, pet. ref'd); *Rodriguez v. State*, 71 S.W.3d 800, 802 (Tex. App.—Texarkana 2002, no pet.); *Erazo v. State*, 260 S.W.3d 510, 512 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) ("If a statute criminalizing the defendant's conduct is unconstitutional, the statute is void from inception…"); *Schuster v. State*, 435 S.W.3d 362, 365 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding § 33.021(b) was void from inception). The state of Texas has a rich tradition in this area of law.

---

### e. Required by the Texas Constitution

Furthermore, Article I of the Texas Constitution contains a specific provision in section 29, dramatically entitled "Provisions of Bill of Rights Excepted From Powers of Government; To Forever Remain Inviolate." This provision is unique and

does not have a counterpart in the federal constitution. It states:

> To guard against transgressions of the high powers herein delegated, we declare that everything in this "Bill of Rights" is excepted out of the general powers of government, and shall forever remain inviolate, and all laws contrary thereto, or to the following provisions, **shall be void**.

Tex. Const. art. I, § 29 (emphasis added). The Interpretive Commentary declares:

> As such, the basic underlying theory of bills of rights is set out, to the effect that certain rights are inalienable, **that man is not capable of divesting himself or his posterity of them even by consent**.

> Article I of the Texas Constitution enumerates these inalienable rights and Section 29 demonstrates that they are not delegated by the people to their government, and, furthermore, **any infringement by the government thereof is void**.

"[B]ecause the Texas Constitution circumscribes the limits of legitimate legislative action, it provides Texas citizens greater protection than that found in the federal constitution." *Satterfield v. Crown Cork & Seal Co., Inc.*, 268 S.W.3d 190, 205 (Tex. App.—Austin 2008, no pet.).

In determining the remedy for Texas citizens convicted under a facially unconstitutional statute, it is valuable to keep in mind Chief Justice Marshall's admonition: That an unconstitutional law is without force "is consequently to be considered, by this court, as one of the fundamental principles of our society. It is not therefore to be lost sight of in the further consideration of this subject." *Marbury v.*

*Madison,* 5 U.S. 137, 177, 2 L. Ed. 60 (1803).



## 2. Non-criminal behavior

The second step in determining the guilt or innocence of a person convicted under a facially unconstitutional statute is to consider whether the specific acts committed were in violation of the law.

---

### a. Dictated by simple, logical rules

Having established that an unconstitutional statute is void from its inception, it follows that those acts which it purported to make criminal were in fact never prohibited. As Supreme Court Justice Bradley stated in 1879, "An unconstitutional law is void, and is as no law. An offence created by it is not a crime." *Ex parte Siebold,* 100 U.S. 371, 376 (1879).

The Texas Penal Code's section entitled "Effect of Code" states, "Conduct does not constitute an offense unless it is defined as an offense by statute, municipal ordinance, order of a county commissioners court, or rule authorized by and lawfully adopted under a statute." Tex. Pen. Code § 1.03.

These simple rules create a cohesive logical expression: If conduct is not an offense unless it is defined by a statute, and an unconstitutional statute is "no more than a piece of blank paper," then conduct defined by an unconstitutional statute is not an offense. *Bockhorn,* 62 Tex. Crim. at 653.

### b. No lesser-included offenses

This Court held in *State v. Wilson*, "that the term 'actual innocence' shall apply, in Texas state cases, only in circumstances in which an accused did not, in fact, commit the charged offense or any of the lesser-included offenses." *State v. Wilson*, 324 S.W.3d 595, 598 (Tex. Crim. App. 2010) *applied in Ex parte Mable,* 443 S.W.3d 129, 130 (Tex. Crim. App. 2014). Therefore, a reviewing court must examine the facts in the indictment and determine whether they could support guilt under any other valid statute. Although this brief deals generally with the question of whether a person convicted under an unconstitutional statute is actually innocent, the facts of this case and the elements of § 33.021(b) will be discussed here.

Under Texas Penal Code § 33.021(b)(1), "A person who is 17 years of age or older commits an offense if, with the intent to arouse or gratify the sexual desire of any person, the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online service, intentionally…communicates in a sexually explicit manner with a minor." Tex. Pen. Code § 33.021(b).

The language in the indictment in this case tracks the elements of § 33.021(b)(1), alleging that he did "with the intent to arouse and gratify the sexual desire of the Defendant, intentionally communicate in a sexually explicit manner with

[the complainant],[1] an individual who represented himself to be younger than seventeen years of age, over the internet, and the Defendant was at that time more than seventeen years of age." (C.R. at 56).

It is well-established that "an offense is a lesser-included offense of another offense, under Article 37.09(1) of the Code of Criminal Procedure, if the indictment for the greater-inclusive offense either: 1) alleges all of the elements of the lesser-included offense, or 2) alleges elements plus facts (including descriptive averments, such as non-statutory manner and means, that are alleged for purposes of providing notice) from which all of the elements of the lesser-included offense may be deduced." *Ex parte Watson*, 306 S.W.3d 259, 273 (Tex. Crim. App. 2009).

In this case, the Court must determine whether the indictment contains all of the elements of any other crime. In *Ex parte Lo*, the Court compared § 33.021(b) to other similar laws, namely the obscenity statutes, child pornography offenses, the display of harmful material to minors, and the solicitation-of-a-child prohibition in subsection (c). However, all of these offenses require proof of additional elements that are not present in this case. They are extraneous offenses, not lesser-included offenses. As the Court stated, § 33.021(b) only requires proof of "non-obscene, non-solicitative, non-child pornographic, non-harmful-to-minors sexually explicit

---

[1] Counsel does not know whether the complainant alleged in the indictment was an actual minor or an adult representing themselves to be a minor. To be cautious, counsel will use "complainant" to substitute the name.

communications to minors." (*Lo*, 424 S.W.3d at 21-22). Otherwise, the statute would have been constitutional. Counsel for the applicant cannot find any offenses that would be lesser-included offenses of either the indictment or of § 33.021(b) generally.

The State in its brief remarks that *Ex parte Mable* (which reiterates the holding of *State v. Wilson* regarding lesser-included offenses) "creates a question as to whether the State's position [agreeing that applicant is actually innocent] is sound." However, the State does not suggest any crimes of which he may be guilty and does not propose any possible lesser-included offenses. (State's Brief at 19); *Ex parte Mable,* 443 S.W.3d 129, 130 (Tex. Crim. App. 2014).

The State also argues, "Certainly, defendants who solicited minors online for illegal purposes committed an act that was 'legitimately criminalized,' even though the statute was drafted in an overbroad manner leading to it being subsequently held unconstitutional." (State's Brief at 20). The State appears to refer to the actual solicitation-of-a-child prohibition in subsection (c) of § 33.021 which criminalizes "knowingly solicit[ing] a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person."

The State's meaning is not clear because subsection (c) was not held to be unconstitutional. It is a distinctly separate crime that does not apply in this case. The State is certainly correct that if a person committed another crime, then they would be guilty of another crime. Likewise, the State might argue that if defendants

23

possessed drugs or stole a wallet then they committed an act that was "legitimately criminalized"—but that is not relevant to their guilt under the conviction at issue.

The Supreme Court addressed this issue in *Bousley v. U.S.* (discussed further below). *Bousley v. United States*, 523 U.S. 614, 624 (1998). There, the Court heard the petitioner's claim of actual innocence alleging that he was convicted of acts not amounting to a crime under the Court's revised definition of "using" a firearm. Notably, the Court rejected the government's argument that to prove innocence Bousley had to show he was innocent of both "using" and "carrying" a firearm. The Court held that because the face of the indictment only alleged "use," then he "need demonstrate no more than that he did not 'use' a firearm…" This holding squarely rebuts the State's suggestion in this case that the applicant has to prove he was also innocent of extraneous, uncharged crimes.

Moreover, in *Hiett v. U.S.,* the Fifth Circuit considered whether the appellant's conduct was non-criminal under an unconstitutional statute. *Hiett v. United States*, 415 F.2d 664, 666 (5th Cir. 1969). In declining to look past the face of the indictment, the court observed:

> Appellant's actual conduct, however, is largely irrelevant here. His attack is on the face of the statute itself. He admits violation of the terms of § 1714, and his conduct is therefore not in issue except as it may furnish an aid to our determining the breadth of application of the statute. It is well settled that if the statute under which appellant has been convicted is unconstitutional, he has not in the contemplation of the law engaged

24

in criminal activity; for an unconstitutional statute in the criminal area is to be considered no statute at all.

*Id.* The court concluded with great insight, "Beyond this well-established truth, there is another good reason for our not considering appellant's conduct, and that is that we have no standards by which to do so." *Id.* To require innocence under not only the indictment but also under any potential uncharged offenses would be to engage in a limitless and unstructured fishing expedition for extraneous offenses.

In accordance with the law of this Court, if a person convicted under an unconstitutional statute is not guilty of any lesser-included offenses within the indictment, then a finding of actual innocence is appropriate. An examination of § 33.021(b) does not reveal any possible lesser-included offenses.

---

### c. No guilty intent

The State tentatively suggests, "Defendants who are convicted of statutes later found unconstitutional intended to commit and did commit the act that was criminalized at the time. Thus, it could be argued that, like the defendant in *Mable*, they would be entitled to habeas relief but not a finding of actual innocence." (State's Brief at 19). In *Mable*, the applicant had been convicted of drug possession but the substance later tested negative for drugs. The Court posited, perhaps as dicta, that Mable intended unsuccessfully to commit the crime of drug possession. *Ex parte Mable,* 443 S.W.3d 129, 130 (Tex. Crim. App. 2014).

The intent in *Mable* is easily distinguished from the intent in this case. Whereas Mable intended to commit an act that was legitimately criminalized (drug possession), a person convicted under an unconstitutional statute intended to commit acts that were **not** legitimately criminalized.

To take the State's suggestion another way, it could be contending that the specter of guilt arises not from the intent to engage in acts that were not legitimately criminalized, but from the intent to simply violate a statute. However, any intent to "thumb one's nose" at the legislature by committing an illegitimately prohibited act is purely theoretical. Therefore, if we apply the legal fiction that citizens are "charged with constructive knowledge of the law," then the corollary must also be true—that citizens are charged with constructive knowledge of the Constitution under which the applicable penal code is invalid. *Wilson v. State,* 825 S.W.2d 155, 159 (Tex. App.—Dallas 1992, pet. ref'd). It is a fundamental principle that "no one is bound to obey an unconstitutional law." 16A Am Jur 2d Constitutional Law § 195. To hold otherwise would be to disregard our founder's fears of an omnipotent legislature that may require obedience to impermissible legislation.



3. **Remedies**

Once it is settled that a person convicted under an unconstitutional statute has committed no crime, it may be useful to consider some remedies and implications relevant to a person's claim of actual innocence. Although ancillary to the question

before this Court, a curious litigant suspects that a curious jurist may be inclined to ponder these issues.

———————————————

### a. Historical examples

It is important to bear in mind that the remedy fashioned for the applicant in this case will be extended to others convicted of unconstitutional offenses in the future. Looking at cases from the past may aid perspective.

For instance, in *Williams v. Carolina Coach Co.* in 1952, the appellant was a "colored citizen" who was arrested for violation of a state statute requiring racial segregation of bus passengers. *Williams v. Carolina Coach Co.*, 111 F. Supp. 329, 331 (E.D. Va. 1952), aff'd, 207 F.2d 408 (4th Cir. 1953). The arrestee refused to move to the back of the bus to make room for a white man. The court held that since the statute was unconstitutional, the appellant was entitled to damages for false arrest.

In *Coleman v. Mitnick*, the court explained that "members of the Fair Share Organization, Inc. approached the appellee Mitnick concerning the employment of a Negro clerk in appellee's drug store. Appellee refused [to hire the black person], telling them 'Just go ahead and picket me.'" *Coleman v. Mitnick*, 137 Ind. App. 125, 128, 202 N.E.2d 577, 579 (1964). The appellant was then arrested for engaging in a protest against racial discrimination under a city ordinance that was later held to be unconstitutional.

In considering the protester's civil claim for false imprisonment, the court

reasoned that the arrest was not justified by the law because "persons are liable for acts done under an act of legislature which is unconstitutional and void. All persons are presumed to know the law, and if they act under an unconstitutional enactment of the legislature, they do so at their peril, and must take the consequences." *Id.* at 129.

It is interesting to note that here the court determined that **the State** was presumed to know the law and to know its actions were wrong and unconstitutional—as opposed to the State's suggestion in this case that **the applicant** should be presumed to have known his acts were wrong (even though they were not legitimately criminalized).

The court in *Mitnick* continued, "It is immaterial at which point of time such statute is declared unconstitutional…When a statute is adjudged to be unconstitutional, it is as if it had never been. Rights cannot be built up under it. It constitutes a protection to no one who has acted under it. It is to be regarded as having never, at any time been possessed of any legal force." *Id.* at 130. The court concluded, "Because of the unconstitutionality of the ordinance, it follows that the affidavit was void from its inception and charged appellant with no offense. Consequently, the arrest and incarceration of appellant was procured pursuant to illegal process." *Id.*

---

### b. Compensation is not an issue for this Court

Just as civil suits appear to have remedied some claims in the civil rights era, the

modern counterpart is the Tim Cole Act, allowing wrongfully imprisoned persons found to be actually innocent to seek compensation from the State. Tex. Civ. Prac. & Rem. Code § 103.001. Under the act, application is made to the Texas Comptroller of Public Accounts, who is authorized to determine eligibility and the amount of monetary compensation owed to the claimant. Tex. Civ. Prac. & Rem.Code § 103.051(a), (b).

If the comptroller denies the claim, the applicant then appeals the decision to the Texas Supreme Court through mandamus. *In re Allen*, 366 S.W.3d 696, 701 (Tex. 2012). It is then Texas Supreme Court's job to interpret the Tim Cole Act and determine the legislature's intent regarding the applicant's eligibility for compensation. *Id.* at 703.

It is not the role of this Court to decide whether a person receives compensation and that is not at issue in this case. That is a question for the legislature, the comptroller, and the Texas Supreme Court. In *In re Allen*, for example, the comptroller worried that a *Schlup* claimant was not appropriate for compensation and so the Texas Supreme Court was called to ultimately settle the question. *Id.*

It is interesting to note that in *Allen*, the court addressed the comptroller's concerns, stating that if a person were to be re-prosecuted and then found guilty after a finding of actual innocence, the statute provides that compensation would cease. *Id.* at 707. This Court's determination regarding actual innocence is therefore not dispositive as to whether a person receives compensation. The court observed, "Just

as someone could be imprisoned for a crime he did not commit, the state could erroneously compensate someone who committed the crime for which he was incarcerated. The imperfection of humanity means that the state may make mistakes, but that possibility does not vitiate the government's interest in avoiding injustice." *Id.*

_____

### c. Immunity from procedural default

In Texas, a finding of "actual innocence" can provide relief from procedural bars that have accrued in an applicant's case. "After all, the central purpose of any system of criminal justice is to convict the guilty and free the innocent." *Herrera v. Collins*, 506 U.S. 390, 398 (1993).

The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a prisoner may pass whether the impediment is a procedural bar or…expiration of the statute of limitations." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928, 1935–36 n.4 (2013). In *Ex parte Tuley*, this Court held that claims of actual innocence are not barred by pleas of guilty or nolo contendere. *Ex parte Tuley*, 109 S.W.3d 388 (Tex. Crim. App. 2002). Additionally, Tex. Crim. Proc. Code art. 11.07 strictly bars successive writs but does provide an exception to this impediment where the applicant is actually innocent. § 11.07, section 4(a)(2).

The Supreme Court has "equated the ends of justice with actual innocence." *Sawyer v. Whitley*, 505 U.S. 333, 361 (1992). Here the law has evolved to provide additional safeguards in tandem with society's increasingly apparent concerns with

wrongful imprisonment.

_____

### d. Clearing one's name

"It is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress." *Marbury v. Madison*, 5 U.S. 137, 147, 2 L. Ed. 60 (1803). Where a person has suffered a conviction as the result of an unconstitutional statute, the only truly proper redress is an official statement of their innocence.

Having one's conviction "reversed" is often insufficient to repair the damage to one's life. The person's criminal history will appear as a confusing mess to lay persons and potential employers will shy away. Without an official finding of innocence, it appears they also may not be eligible for an expunction of their record under a plain reading of the code. Tex. Crim. Proc. Code art. 55.01(a)(1)(B)(ii). Even if they were to successfully petition a court for expunction of their criminal histories, it is nearly impossible in the modern age to ever completely erase a record due to the mass proliferation of commercial and internet databases. Additionally, one's extended absence from society will be exceedingly difficult to explain.

A document from this Court proclaiming "actual innocence" is the only hope for a person to rectify the damage that will inevitably follow them for the rest of their lives.



### 4. Framing the claim

Claims of actual innocence have traditionally been categorized either as *Herrera*-type claims or *Schlup*-type claims. *Herrera v. Collins*, 506 U.S. 390 (1993); *Schlup v. Delo,* 513 U.S. 298 (1995); *Elizondo*, 947 S.W.2d at 208. A *Herrera* claim involves a solitary claim of innocence. *Schlup*, 513 U.S. at 314; *See also Elizondo*, 947 S.W.2d at 208. In contrast, a *Schlup* claim involves a claim of innocence that is coupled with an additional claim of constitutional error in the proceedings below. *Schlup*, 513 U.S. at 314. A claim of actual innocence based on a conviction for non-criminal acts has also been recognized without being strictly categorized under either *Schlup* or *Herrera*. *See Alexander v. Johnson*, 217 F. Supp. 2d 780, 792 (S.D. Tex. 2001), aff'd sub nom. *Alexander v. Cockrell*, 294 F.3d 626 (5th Cir. 2002).

---

### a. *Herrera*

To prevail on a *Herrera*-type claim in Texas habeas, this Court enunciated the standard in *Elizondo* that "an applicant must show by clear and convincing evidence that no reasonable juror would have convicted him in light of newly discovered evidence." *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996). A person convicted under a facially unconstitutional statute can show his innocence by clear and convincing evidence, as discussed above.

Although it does not fit neatly within a *Herrera* analysis, such a claim meets—

and perhaps even exceeds—the burden, and yet it lacks much of the complexity often accompanying *Herrera* cases. *Herrera's* burden is high because the claims are premised on the assumption that the applicant was convicted in an error-free proceeding and "with the full panoply of protections that our Constitution affords criminal defendants." *Schlup*, 513 U.S. at 315. As this Court emphasized in *Elizondo* regarding *Herrera* claims, "Where the trial has been constitutionally error-free, a conviction is entitled to the greatest respect." *Ex parte Elizondo*, 947 S.W.2d at 209. When the majority in *Elizondo* decided that *Herrera* claims would be cognizable in Texas habeas, the dissenters launched a strident objection, noting "the habeas applicant is a legally guilty person, not an innocent one" and "the state has a strong interest in punishing the guilty and in the finality of its judgments." *Id.* at 213.

In contrast, a conviction based on a statute held to be facially unconstitutional is entitled to no respect at all since it is void from inception. Therefore, the trepidation that often accompanies *Herrera* claims due to concerns with finality is not a problem in these cases.

Additionally, applicants generally must present new factual evidence in order to meet the "clear and convincing" burden. In cases where people are clearly convicted only for unconstitutional offenses, it is not necessary for courts re-evaluate and re-weigh the evidence. The showing of innocence can be met merely by analyzing the indictment.

Although these cases do not have some of the hallmark features of *Herrera*

claims that tend to make courts uneasy, the required showing of innocence can be met. These claims have less of the mess and even more of the innocence than traditional *Herrera* claims. Therefore, it would not be impermissible for such a claim to be granted under the framework of *Herrera*.

_____

### b. *Schlup*

In a *Schlup*-type claim, innocence is tied to a showing of constitutional error at trial. An applicant must show that the constitutional error probably resulted in the conviction of one who was actually innocent. *Ex parte Spencer*, 337 S.W.3d 869, 878 (Tex. Crim. App. 2011). Actual innocence is not itself the only basis for relief, but is a "gateway" for obtaining relief based on what may be an otherwise-barred complaint of constitutional error at trial. *Ex parte Franklin*, 72 S.W.3d 671, 675 (Tex. Crim. App. 2002). Applicants who were convicted under a facially unconstitutional statute appear to fit rather neatly under this standard.

The Supreme Court observed that "a court's assumptions about the validity of the proceedings that resulted in a conviction are fundamentally different in Schlup's case than in Herrera's" *Schlup*, 513 U.S. at 315. The lower burden of proof for the applicant in a *Schlup* claim is justified because the conviction "may not be entitled to the same degree of respect of one, such as Herrera's, that is the product of an error-free trial." *Id.* at 316. In cases where the offense has been ruled facially unconstitutional, it has already been shown that the conviction is entitled to no

respect.

In *Bousley v. U.S.*, the Supreme Court chose to analyze a similar claim under the rubric of *Schlup* when it considered the case of a person who claimed to have pled guilty to behavior that was later held to be non-criminal. *Bousley v. United States*, 523 U.S. 614, 626 (1998). Specifically, Bousley pled to "use" of a firearm at a time when mere possession was widely believed to constitute illegal "use." Then when the Supreme Court later declared that illegal "use" actually meant "active employment," he filed a writ claiming actual innocence under that official interpretation. *See Bailey v. United States*, 516 U.S. 137, 144 (1995).

Bousley faced a procedural bar to his claim because he had pled guilty and never raised the issue on appeal. The Supreme Court examined the case under *Schlup*. As to *Schlup's* first prong, he claimed that "neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged." The Court held, "Were this contention proved, petitioner's plea would be, contrary to the view expressed by the Court of Appeals, constitutionally invalid." Likewise, for persons convicted under a facially unconstitutional statute, it is axiomatic that the underlying proceedings were pervaded with misunderstanding.

As Justice Stevens observed in his concurrence, "The fact that all of his advisers acted in good-faith reliance on existing precedent does not mitigate the impact of that erroneous advice. Its consequences for petitioner were just as severe, and just as unfair, as if the court and counsel had knowingly conspired to deceive him

in order to induce him to plead guilty to a crime that he did not commit. Our cases make it perfectly clear that a guilty plea based on such misinformation is constitutionally invalid." *Id.* at 626. The same concerns are present in the case at bar although no such findings are necessary since the plea itself was patently void and unconstitutional as described above.

The Court concluded that Bousley was entitled to an actual innocence finding under *Schlup* if he could show that the constitutionally invalid plea "has probably resulted in the conviction of one who is actually innocent." *Id.* at 623. As in this case, the Court stated that "decisions of this Court holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct beyond the power of the criminal law-making authority to proscribe, necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal." *Id.* at 620.

It should be noted that since Bousley claimed to have pled guilty under an incorrect interpretation of a valid statute, this necessitated additional fact-findings on remand to determine if he innocently possessed the firearm or actively employed it. In the present case, the plea of guilty could not have been authorized under any factual scenario as it was void in its entirety. Like in *Bousley*, the guilty plea was constitutionally invalid and therefore satisfies the first prong of *Schlup*.

There are essentially two questions that can be answered in the affirmative by looking at the indictment in this case: 1) whether the applicant was convicted under a

statute which has been ruled facially unconstitutional, and 2) whether the elements established to have been committed constitute only non-criminal behavior. Such an analysis satisfies the two prongs of a *Schlup* claim.

_____

### c. As a unique category

In *Long v. State*, this Court held the stalking statute to be facially unconstitutional. *Long v. State*, 931 S.W.2d 285, 287 (Tex. Crim. App. 1996). As a result, the petitioner in *Alexander v. Johnson* brought a federal habeas claim challenging the revocation of his parole based on his violation of the stalking statute. *Alexander v. Johnson*, 217 F. Supp. 2d 780, 783 (S.D. Tex. 2001), aff'd sub nom. *Alexander v. Cockrell*, 294 F.3d 626 (5th Cir. 2002). In a well-reasoned opinion, the federal court held that he was "by necessity actually innocent." *Id.* at 792. The court explained:

> Because the state law under which his parole was revoked has been declared unconstitutional, Alexander is by necessity actually innocent of a violation of the law. It is well settled that if the statute under which appellant has been convicted is unconstitutional, he has not in the contemplation of the law engaged in criminal activity; for an unconstitutional statute in the criminal area is to be considered no statute at all. Although courts have framed the actual innocence factor differently, the core idea is that the petitioner may have been imprisoned for conduct that was not prohibited by law. Here, Alexander has made a showing of actual innocence, because he cannot be held to have violated the facially unconstitutional statute upon which the revocation of his

parole was based. Having been declared unconstitutional, the stalking statute was void from its inception and conferred no right or benefit. Clearly, the incarceration of one whose conduct is not criminal inherently results in complete miscarriage of justice.

*Id.* at 792 (internal citations and quotations omitted) (*citing, among others, Hiett v. United States*, 415 F.2d 664, 666 (5th Cir. 1969) ("It is well settled that if the statute under which appellant has been convicted is unconstitutional, he has not in the contemplation of the law engaged in criminal activity; for an unconstitutional statute in the criminal area is to be considered no statute at all."); *Reyes-Requena v. United States,* 243 F.3d 893, 904 (5th Cir. 2001) ("Because his claim is that he has been imprisoned for non-criminal conduct, as acknowledged by Bailey, he meets the actual innocence prong of our savings clause test."); *Davis v. U. S.*, 417 U.S. 333, 346 (1974) ("If this contention is well taken, then Davis' conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and presents exceptional circumstances.").

In examining the novel issue before this Court today, the federal court in *Alexander* organically framed the issue in simple, logical terms. Based on deeply-rooted principles, the court was clear: "Because the state law under which his parole was revoked has been declared unconstitutional, Alexander is **by necessity** actually innocent of a violation of the law." *Id.* (emphasis added). It is a necessity to so hold

because to do otherwise would undermine the historic foundation of our government, thus thwarting "checks and balance," "judicial review," and the supremacy of the Constitution.

Respectfully submitted,

Alexander Bunin
Chief Public Defender


**/s/ Sarah V. Wood**
**SARAH V. WOOD**
Assistant Public Defender
Harris County Texas
Texas Bar Number 24048898
1201 Franklin, 13th Floor
Houston Texas 77002
(713) 368-0016 (phone)
(713) 368-9278 (fax)
Sarah.Wood@pdo.hctx.net

**CERTIFICATE OF SERVICE AND COMPLIANCE**

I certify that a copy of this Brief for Applicant has been served upon the Harris County District Attorney's Office by electronic delivery to Roe Wilson via the e-file system and that this brief has 7,913 words according to the computer program used to draft it.

**/s/ Sarah V. Wood**
**SARAH V. WOOD**
Assistant Public Defender
